GAY TOYS, INC., Plaintiff,

v.

BUDDY L CORPORATION, Defendant.

Civ. A. No. 80–74325.

United States District Court,
E. D. Michigan, S. D.

Sept. 17, 1981.

Robert G. Mentag, Detroit, Mich., for plaintiff.

Raymond E. Scott, Cullen, Sloman, Cantor, Grauer, Scott & Rutherford, Detroit, Mich., Marvin N. Gordon, Hopgood, Calimafde, Kalil, Blaustein & Judlowe, New York City, for defendant.

## FINDINGS AND MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

1. The plaintiff, Gay Toys, Inc., is a corporation of the State of Michigan and has its principal place of business in Walled Lake, Michigan.

2. The defendant, Buddy L Corporation, is a corporation of the State of Delaware and has its principal place of business in New York, New York.

3. The court has jurisdiction over the subject matter of this case and over the parties.

4. Sometime in early 1977, the defendant's then employee, Finn Tornquist, was assigned the task of designing a new toy airplane to add to the defendant's line of toys. In April, 1978, the defendant began to market a toy airplane called the "Air Coupe", which incorporated the design made by Mr. Tornquist. The defendant's toy airplane at all times since it was offered to the public in 1978 has carried a copyright notice prescribed by the copyright laws. On November 19, 1980, the Register of Copyrights granted a Certificate of Copyright Registration No. VA 61–293 for defendant's Air Coupe Toy Airplane design, and defendant is the owner of the copyright and the Certificate of Registration therefor.

5. Mr. Tornquist was asked by the defendant to design and designed the defendant's Air Coupe Toy Airplane so that it (a) would look like an airplane, and (b) would take up minimal space in a package in which it would be sold at retail. A purpose of designing such an airplane was to make it an attractive toy to be sold to and used by youngsters in their play and in their intellectual development. The short wings and the short fuselage of the defendant's Air Coupe Toy Airplane, and other design characteristics providing a fat, stubby airplane, were to make the plane fit within a very restricted space. One of the major purposes for such a design was to save space in packaging so as to save freight in transportation. The Tornquist drawings were made to look like a typical single engine, low-wing, retractable wheeled aircraft—but stubbier and fatter with shorter wings.

6. Early in 1980, the plaintiff's president, Arnold Littleton, purchased one of defendant's Air Coupe toy airplanes. That plane, together with various other airplanes made by other toy manufacturers, various catalogues, airplanes manufactured by the plaintiff, and brochures put out by Beechcraft, was used as a part of a product planning session for the purpose of reviewing what toy airplanes were available on the market and for the purpose of planning a new toy airplane. At that session, held early in 1980, the plaintiff decided that there was a need to design a new toy airplane.

7. Mr. Kurt Podgorski was requested to make a model of a new toy airplane for the plaintiff. He had previously provided models for many other toy products for the plaintiff, including a number of toy airplanes. He was given oral instructions to provide a single engine aircraft with a T-top with no windshield, so that certain figurines that had previously been used by the plaintiff in other of their toys could be used in the airplane. Mr. Podgorski was also instructed to provide an airplane that looked something like a Beechcraft single engine plane with a single stabilizer, and that would be of such size that it would fit with other specified toys manufactured by the plaintiff and could be assembled with these other toys into a group package. Mr. Fisher of the plaintiff's engineering staff worked with Mr. Podgorski to make certain that compliance with the toy safety standards was met. During the process of making the model of the plaintiff's toy airplane, the plaintiff had access to the defendant's Air Coupe toy airplane, as well as to other airplanes and other information about airplanes. Mr. Podgorski had in his model making room the defendant's plane, and he looked at it during the making of the model of the plaintiff's "Flying Eagle I" toy airplane.

8. Mr. Podgorski made no two-dimensional drawings of the plaintiff's Flying Eagle, but he did create a wood model of the plaintiff's airplane that was approved by the president of the plaintiff. From this wood model, plastic prototypes were made and the Flying Eagle was developed. The plaintiff has manufactured and sold Flying Eagle toy airplanes that were designed by Mr. Podgorski.

9. The plaintiff's Flying Eagle I airplane looks like the defendant's toy airplane but is larger and fatter. Its dimensions differ from those of the defendant's toy

airplane. They differ not only abstractly but also in reference to one another. It is clear from looking at the measurements of the various dimensions of the planes that Mr. Podgorski did not simply increase the size of the defendant's airplane. The planes differ in the material used, as to cabin enclosure, in the labels and coloring, in the existence of hubs, in the method of wheel assembly, in the number of pieces, and the way in which the propeller is attached. In addition to this, the plaintiff's toy airplane has fixed landing gear, whereas the defendant's airplane has collapsable landing gear. To a casual observer, the plaintiff's airplane looks like a larger version of the defendant's airplane, except as to color and labeling, lack of cabin enclosure, and lack of folding wheels.

10. All of the elements found in the plaintiff's Flying Eagle I toy airplane and the defendant's Air Coupe toy airplane are in the public domain. They are found in actual airplanes, prior toy airplanes, United States Government patents, and other literature. Both parties' toy airplanes include elements such as engine cowlings on the front end of the fuselage, wings with substantially straight-edged tips, T-roof, stubby looking planes with short wings.

11. Very shortly after the plaintiff first offered for sale its Flying Eagle I toy airplane in October, 1980, the plaintiff was informed by the defendant that they were infringing the copyright on the defendant's airplane. The plaintiff filed this action on November 14, 1980 asking the court to declare the defendant's copyright invalid and to enter a judgment declaring that the plaintiff's Flying Eagle I did not infringe said copyright, if valid. The defendant filed an answer and a counterclaim of infringement of its Copyright Registration No. VA 61–293 on February 4, 1981. The action arises under the Copyright Laws of the United States under the Declaratory Judgment Act of Title 28, United States Code, § 2201.

### DISCUSSION

Title 17 of the United States Code, § 102, provides in part as follows:

(a) Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. Works of authorship include the following categories:

\*　　\*　　\*　　\*　　\*　　\*

(5) pictorial, graphic, and sculptural works;

\*　　\*　　\*　　\*　　\*　　\*

17 U.S.C. § 102(a).

The Act defines "pictorial, graphic, and sculptural works" in § 101 of Title 17 of the United States Code, as follows:

\*　　\*　　\*　　\*　　\*　　\*

"Pictorial, graphic, and sculptural works" include two-dimensional and three-dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions, maps, globes, charts, technical drawings, diagrams, and models. Such works shall include works of artistic craftsmanship insofar as their form but not their mechanical or utilitarian aspects are concerned; the design of a useful article, as defined in this section, shall be considered a pictorial, graphic, or sculptural work only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.

\*　　\*　　\*　　\*　　\*　　\*

17 U.S.C. § 101.

The definition of "useful article" is as follows:

\*　　\*　　\*　　\*　　\*　　\*

A "useful article" is an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information. An article that is normally a part of a useful article is considered a "useful article."

\*　　\*　　\*　　\*　　\*　　\*

17 U.S.C. § 101.

Thus the Act stresses that, although sculptural works may be copyrighted, the

copyright shall apply only to the "artistic craftsmanship insofar as their form but not their mechanical or utilitarian aspects are concerned." The statute also emphasizes that the design of a useful article having an intrinsic utilitarian function may be considered to be sculptural only if, and only to the extent that, such design incorporates sculptural features that can be identified separately from and are capable of existing independently of the utilitarian aspect of the article. Thus the statute emphasizes that the utilitarian aspect of an article should not be subject to copyright.

Because it is not contended in this case that the toy plane is anything more than a three-dimensional work of applied art or a model, the following statement fairly summarizes the statutory provisions quoted above as they relate to this case.

■ As applied in this case, the Copyright Act protects the form of artistic craftsmanship but not mechanical or utilitarian aspects of useful articles (i. e., articles having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information) that are three-dimensional works of applied art or models but only if, and only to the extent that, the design incorporates sculptural features that can (1) be identified separately, and (2) be capable of existing independently of the utilitarian aspect of the article.

A number of issues are presented.

1. Is the toy plane a useful article? Does it have utility?

The airplanes are toys. Toys are useful. A plane is a thing to play with. Play is an integral part of growing up. Children need toys. A toy airplane is useful and possesses utilitarian and functional characteristics in that it permits a child to dream and to let his or her imagination soar. The defendant's Air Coupe toy airplane is also useful, functional, and utilitarian since it was designed to be a fat, stubby airplane to fit in restricted package space, to make the package smaller, and to make it more economical to ship. The basic elements employed in the overall design of the defendant's toy airplane are functional and utilitarian since they are mandated by the overall shape required to simulate a real airplane. Clearly, without question, the defendant's toy airplane is both useful and utilitarian.

2. Is it a three-dimensional work of applied art or a model?

The answer is "yes."

3. Are there sculptural features that can be identified separately of the utilitarian aspect of the article?

The shape and appearance of the plane are the features defendant wishes to protect. They clearly can be identified separately from the utility of the plane as a toy. Children can play with all shapes and sizes of toy airplanes. They are, however, the very features that make the plane economical to ship. They make the package small so that more planes can be packed in the same space. This was an important reason for the design of the plane and is a utilitarian aspect of the article.

4. Are the sculptural features capable of existing independently of the utilitarian aspect of the article?

The appearance of this toy airplane (its sculptural features) relating to its stubby wings and short, fat body cannot exist independently of the plane itself. It is a part of the utility of the plane as a toy. It is an integral part of the toy. The sculptural features are also a part of the effort to provide economies in packaging and shipping. In either respect, they may not exist, physically or conceptually, independently of the utilitarian aspect of the article.

■ The design of the defendant's Air Coupe toy airplane is not copyrightable subject matter because it is not a sculptural work in accordance with the definition of such work in the Copyright Act. This is so because it is a useful article, and it does not include features that can be identified separately from or are capable of existing independently of the utilitarian aspect of the Air Coupe toy airplane.

The foregoing analysis of the Copyright Act is supported by the history of the adoption of that Act. See *Esquire, Inc. v.*

*Ringer,* 591 F.2d 796 (D.C.Cir. 1978); Judge Weinstein dissenting in *Kieselstein-Cord v. Accessories by Pearl, Inc.,* 632 F.2d 989, 994 (2d Cir. 1980).

Professor Nimmer in his Treatise on Copyright Law speaks to the legislative history as follows:

This brings us to the manner in which the current Copyright Act deals with this issue. In part because of the *Esquire* decision in the district court, the House Committee amended the original Senate version of the revision bill so that in the final Act the following was added to the definition of pictorial, graphic and sculptural works:

Such works shall include works of artistic craftsmanship insofar as their form but not their mechanical or utilitarian aspects are concerned; the design of a useful article, as defined in this section, shall be considered a pictorial, graphic, or sculptural work only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.

It will be seen that the above is an almost verbatim repetition of Copyright Office Regulation Section 202.10(c) under the 1909 Act, but with one significant difference.

Under the Regulation an "attractively shaped" article will not as such qualify for copyright only if "the sole intrinsic function" of the article is its utility. In the new Act copyright will be denied to the shape of a "useful article," as incorporated in the definition of a pictorial, graphic and sculptural work, even if its *sole* intrinsic function is not utility. A work is a "useful article," and therefore denied copyright for its shape as such, if it has "an intrinsic utilitarian function," even though it may have other functions which are not utilitarian. Thus, where the *Esquire* district court found the old Regulation inapplicable to deny copyright to a lighting fixture because it had an aesthetic as well as a utilitarian intrinsic function, under the new Act copyright may be denied to the shape of an article if one of its several "intrinsic" functions is that of utility. That this was the legislative intent is indicated by the following passage in the House Report:

... although the shape of an industrial product may be aesthetically satisfying and valuable, the Committee's intention is not to offer it copyright protection under the bill. Unless the shape of an automobile, airplane, ladies' dress, food processor, television set, or any other industrial product contains some element that, physically or conceptually, can be identified as separable from the utilitarian aspects of that article, the design would not be copyrighted under the bill. The test of separability and independence from "the utilitarian aspects of the article" does not depend upon the nature of the design—that is, even if the appearance of an article is determined by aesthetic (as opposed to functional) considerations, only elements, if any, which can be identified separately from the useful article as such are copyrightable.

Nimmer on Copyright, pages 2–93 and 2–94.

As to the differences between the opinions of the District of Columbia Court of Appeals and the Second Circuit Court of Appeals, it seems clear to this court that the opinion of Judge Bazelon in *Ringer* and the dissenting opinion of Judge Weinstein in *Kieselstein-Cord* have the greater force, and express more accurately the intent of Congress in adopting the Act. The legislative history is fully set out in the Weinstein dissent, *supra,* and need not be repeated here.

Since the court has found that the copyright registration is not valid, there is no reason to decide the question of infringement. For these reasons, judgment should be entered in favor of the plaintiff on both the plaintiff's claim and on the defendant's counterclaim.

The judgment should:

1. Declare the copyright of VA 61–293 of the defendant airplane sculpture invalid;

2. Direct the copyright office to cancel the registration of that copyright;

3. Declare that Gay Toys has the right to make, use, and sell, offer for sale, toy airplanes of the type and structure of "The Flying Eagle I" toy airplane without threats or interference arising out of the alleged copyright against Gay Toys or its customers;

4. Provide for costs; and

5. Grant reasonable attorney's fees.

So ordered.