CLIFTON, Circuit Judge,
dissenting:
I respectfully dissent. I conclude that Lanard’s Drop Copter toy and the launcher handles of its Wild Copters and Stunt Plane toys are uncopyrightable “useful articles” under 17 U.S.C. § 101. The evidence, even when construed in the light most favorable to Lanard, reasonably permits only this conclusion, which is contrary to the jury’s verdict. See Pavao v. Pagay, 307 F.3d 915, 918 (stating this standard of review for a denial of a renewed Rule 50 motion for judgment as a matter of law). I believe, therefore, that we should reverse the district court’s denial of Novelty’s Rule 50 motion as to the copyrightability of these toys.[1] The jury likely perceived Novelty as a willful vendor of flagrant knock-offs coming from China, described at trial, as the majority notes, at 11, as a “den of piracy.” Even so, Lanard has no right to copyright remedies if the toys Novelty imitated are not among the works that the Copyright Act protects. They are not, and the jury misapplied the law in concluding otherwise.
The majority deems the Drop Copter and launcher handles copyrightable as “sculptural works.” The portion of 17 U.S.C. § 101 that extends copyright to this category of works reads:
“Pictorial, graphic, and sculptural works” include two-dimensional and three-dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions, maps, globes, charts, diagrams, models, and technical drawings, including architectural plans. Such works shall include works of artistic craftsmanship insofar as their form but not them mechanical or utilitarian aspects are concerned; the design of a useful article, as defined in this section, shall be considered a pictorial, graphic, or sculptural work only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.
*715 17 U.S.C. § 101. “Useful article” is defined as “an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information.” Id.
As the Sixth Circuit recognized in Gay Toys, Inc. v. Buddy L Corp., 703 F.2d 970 (6th Cir.1983), the above-quoted language defines the category of “pictorial, graphic, and sculptural works” that are eligible for copyright protection in a three-step logical process: first, “copyright protection is extended to ‘pictorial, graphic, and sculptural works’ generally”; then, “an exception to this general rule is carved out by exempting ‘useful articles’ from copyrightability”; and, finally, “nevertheless, certain particular features of ‘useful articles’ [i.e., those “that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the [useful] article”] may be separately copyrighted.” Gay Toys, 703 F.2d at 972.
Assuming that they qualify as sculptures generally, the Drop Copter and the launcher handles are plainly “useful articles” subject to the statute’s exception, because they have “intrinsic utilitarian function[s]” that are unrelated to merely portraying their own appearances. The Drop Copter uses an elastic slingshot to launch plastic spinners into the ah*. The Wild Copters and Stunt Plane launcher handles serve— as their very description as “launcher han-dies” suggests — as places to grasp the mechanisms that launch the toys into the ah-.
These “intrinsic utilitarian function[s],” which do not “merely ... portray the appearance of the articlefs] or ... convey information,” differentiate the toys (and toy components) in this case from the toy airplane in Gay Toys. The Gay Toys court held that the toy airplane before it was not a “useful article” because it was “merely a model which portrays a real airplane.” Gay Toys, 703 F.2d at 973. The only “use” attributed to the model airplane in Gay Toys was to “permit[ ] a child to dream and to let his or her imagination soar.” Id. The Gay Toys court rightly recognized that inspiring imagination should not make an object “useful.” Paintings and other pieces of pure art (to which Congress clearly extended copyright) have similar imagination-stoking “uses” that would bring them within the “useful article” exception if “use” were defined so broadly. That approach “would have the ‘useful article’ exception swallow the general rule.” Id.
In contrast, however, the toys here do more than serve as models. They actually launch objects into the air. The portions of the toys that exist to accomplish this flight have more concrete utilitarian functions than the Gay Toys plane that properly bring them within the “useful article” exception.[2]
*716 The question in this case — not reached in Gay Toys, because there the Sixth Circuit held that the toy airplane was not a useful article[3]- — is whether elements of the designs of the Drop Copter and launcher handles are separately copyrightable despite the utilitarian functions of these articles. “[T]he design of a useful article ... shall be considered a ... sculptural work only if, and only to the extent that, such design incorporates ... sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.” 17 U.S.C. § 101 (emphasis added); see also, e.g., Chosun Int’l, Inc. v. Chrisha Creations, Ltd., 413 F.3d 324, 328 (2d Cir.2005) (“[I]f a useful article incorporates a design element that is physically or conceptually separable from the underlying product, the element is eligible for copyright protection.”).
Inspection of these toys compels the conclusion that there are no sculptural features of the Drop Copter toy or the launcher handles that “can be identified separately from, and are capable of existing independently of, the utilitarian aspects of’ these articles. The physical forms of the Drop Copter and launcher handles are about as close to purely functional as possible. Virtually every physical feature of the Drop Copter toy is directed by its intended use: to launch the “copter” from an elastic band and fly through the air. Lanard does not even attempt to point out specific sculptural features of the Drop Copter that are separably identifiable and independent of its utilitarian aspects; it would be all but impossible to do so, because the Drop Copter has no “design element[s]” that come remotely close to satisfying this standard.
The sculptural features of the Stunt Plane and Wild Copters launcher handles are similarly utilitarian. A toy airplane might inspire a child to dream, but I doubt that any child ever dreams about one of these launcher handles — or even looks at it except to use it. The standard handle shape conforms to the natural shape of a human hand to facilitate grasping. Grooves on the handles improve a user’s grip. It is difficult to identify any sculptural features of the handles beyond their basic shape and grooves, and Lanard makes no attempt to do so. That no feature of the launcher handles is — or even purports to be — expressive or artistic leaves these handles a far cry from the sort of decorative components of useful articles that courts have found eligible for copyright protection. See, e.g., Mazer v. Stein, 347 U.S. 201, 202, 74 S.Ct. 460, 98 L.Ed. 630 (1954) (holding that “statuettes of male and female dancing figures made of semivitreous china” are copyrightable despite their use as bases for table lamps); Kieselstein-Cord v. Accessories by Pearl, Inc., 632 F.2d 989, 990 (2d Cir.1980) (holding that belt buckles “cast in precious metals — decorative in nature and used as jewelry is, principally for ornamentation” and cast from specially handcrafted molds are copyrightable); see also Fabrica Inc. v. El Dorado Corp., 697 F.2d 890, 893 (9th Cir.1983) (“[I]f an article has any intrinsic utilitarian function, it can be denied copy *717 right protection except to the extent that its artistic features can be identified separately and are capable of existing independently as a work of art.”).
Even with respect to the Wild Copters launcher handle — where the copyright registration certificate established the presumptive validity of the copyright in that toy — Novelty carried its burden of establishing that the launcher handle was an uncopyrightable useful article by introducing the toy itself into evidence. With the toy and other submitted evidence (such as testimony about the utilitarian function of the handle’s grooves) before it, a jury, applying the copyright statute’s legal standards faithfully, could reasonably only conclude that the handle was a useful article and that no sculptural feature of it was independently copyrightable. Novelty was not required, as the majority suggests, at 10, to introduce any more evidence than it did to make this conclusion unavoidable. That this court in Poe v. Missing Persons, 745 F.2d 1238, 1243 (9th Cir.1984), “identified] [four types of] relevant evidence which may be presented to the trier of fact” to establish whether an article is functional or a work of art did not make the presentation of evidence in those four illustrative categories mandatory. Novelty, therefore, did not automatically fail to carry its evidentiary burden simply because it relied on other sufficient evidence (the toys themselves, and testimony about their sculptural features) instead of any of the four types of proof this court happened to enumerate in Poe.
Although I favor reversal of the jury’s verdict here, I generally agree with the majority that the classification of useful articles is a fact-intensive, case-by-case determination that is typically best left to a jury. In closer cases, where the line between useful articles and art is fuzzy, a jury should make the difficult call, and the call it makes should be entitled to deference. In this case, however, I see no reasonable way that the jury could have applied the statutory standards to the toys at issue and reached the conclusion that it did.
We should reverse the district court’s denial of Novelty’s motion for judgment as a matter of law insofar as it held that copyright protects these toys.

. The uncopyrightability of the Wild Copters launcher handle — the only work registered before Novelty began selling its toys, and thus the only basis for statutory damages under 17 U.S.C. § 412 — requires that we reverse the judgment on this infringement claim (along with the others related to uncopyrightable toys) and vacate Lanard’s statutory damages award. Novelty argues that we must also vacate the finding that Lanard was a prevailing party and order the payment of costs, including attorney’s fees, incurred by Novelty since its Rule 68 Offer of Judgment. I would remand the case to the district court to resolve these subsidiary issues in the first instance.

. The majority misunderstands the Drop Copter’s relevant utilitarian function. It does not matter that the Drop Copter propellers are “not capable of actually flying, or transporting people or supplies, like real helicopters,” majority memo, at 710, because no one claims that this is their intended or actual function. The Drop Copter's "intrinsic utilitarian function” is to launch a pair of plastic propellers into the air to entertain children.
The majority also misses important distinctions when it analogizes the Drop Copter — a functional object — to the toy airplane in Gay Toys — a mere model. The majority asserts that the Drop Copter's flight “is simply a portrayal of [a real helicopter],” majority memo, at 710, in the same sense that “a toy airplane is merely a model which portrays a real airplane.” Gay Toys, 703 F.2d at 973. The analogy fails in two ways: (1) the Gay Toys plane was (as far as the opinion’s description of it suggests) a closer approximation of its real-life analogue than the unadorned propeller pieces of the Drop Copter are of a real helicopter, and (2) the model plane's "portrayal" of a real plane depended exclusively on the form of the sculptural work itself; there is no reason to think that the *716 copyright statute’s definition of a "sculptural work” encompasses physical movement of a sculpture in the world. ”[P]ortrayal of the real objects” through " 'flight,'" majority memo, at 710 (discussing how these toys merely portray their real-world equivalents), is a different kind of “portrayal” than strictly form-based imitation, precisely because it integrates the object’s [iinction into the so-called portrait.

. “[Bjecause we conclude that the Air Coupe is not a 'useful article,’ we need not consider whether certain aspects of the item are copyrightable individually as separate and independent features.” Gay Toys, 703 F.2d at 974.