**Gregory POE, Plaintiff-Appellant,**

v.

**MISSING PERSONS, Dale Bozzio, Steven Brooks, Capitol Records, Inc., Capitol Industries-EMI Inc., Defendants-Appellees.**

**No. 83–6132.**

United States Court of Appeals, Ninth Circuit.

Argued June 7, 1984.

Submitted Aug. 24, 1984.

Decided Oct. 23, 1984.

Paul D. Supnik, Beverly Hills, Cal., for plaintiff-appellant.

Daniel Rosenberg, Stein & Kahan, Santa Monica, Cal., for defendants-appellees.

Before WALLACE, PREGERSON, and ALARCON, Circuit Judges.

ALARCON, Circuit Judge:

Gregory Poe appeals from the order of the district court granting the appellees' motion for a summary judgment on Poe's claim of copyright infringement and violation of section 43(a) of the Lanham Act. Poe also seeks reversal of the dismissal of all pendent state claims.

## I.

We must decide whether the evidence submitted by the parties on the motion for a summary judgment raised a genuine issue of material fact. We have concluded that the evidence presented to the district court reveals that there is a disputed issue of material fact as to whether "Aquatint No. 5" is a utilitarian article of clothing or a work of art.

## II.

Poe filed a claim seeking damages for the copying of an article he created which he described "as an artwork in the medium of soft sculpture entitled 'Aquatint No. 5'."

Appellees moved for a summary judgment claiming that "the critical facts in this case are not in dispute. There is no dispute that plaintiff designed the *swimsuit*." (emphasis added).

Appellees presented no evidence in support of their contention that Poe's article was a "swimsuit" or an article of clothing. The only evidence offered by the appellees in support of the motion for a summary judgment was the declaration of one of their lawyers. This declaration merely states that the quotations from Poe's deposition are accurate. Copies of portions of Poe's deposition are attached to the declaration.

In his deposition, Poe referred to Aquatint No. 5 as "visual art." Poe stated that he had asked Carla Weber to photograph fashion designs or articles of clothing that he was selling. Carla Weber in turn asked

him if she could photograph Aquatint No. 5.

Poe filed a declaration in opposition to the motion for a summary judgment to give factual support to his claim that there were triable issues of fact as to whether Aquatint No. 5 was a work of art or an article of clothing. The following pertinent facts were set forth in Poe's declaration. Poe is an artist and fashion designer whose clothing styles are recognized in the fashion world. He was a student at California Institute of the Arts in 1978. That same year he created Aquatint No. 5.

Poe described Aquatint No. 5 as an eccentric and controversial piece of "... an artwork, not clothing. It is an artists impression or rendering of an article of clothing and in this context, I developed, created and originated this work as an artist. It stands by itself as a work of conceptual art."

Poe stated that Aquatint No. 5 appeared in an art show sponsored by the Los Angeles Institute for Contemporary Art. Carla Weber requested that "she be able to use the artwork so that she could photograph it and place the photograph in her professional portfolio."[1] Poe did not consent to the use of Aquatint No. 5 on an album cover. Aquatint No. 5 was marked "Gregory Poe©" at the time it was photographed by Carla Weber.

In Poe's application for a copyright, to which Poe alludes in his declaration, the article is described as a "three dimensional work of art in primarily flexible clear-vinyl and covered rock media."

At the hearing on the motion for summary judgment, the original article, Aquatint No. 5, was introduced as an exhibit. We

---

1. The following colloquy illustrates the distinction made by Poe at his deposition between his visual art, as exemplified by "Aquatint No. 5," and his fashion designs on articles of clothing:

Q When did you meet her?
Q Have you ever worked together in any capacity?
A I have collaborated with Carla.
Q Did you pay her?
A No. I paid her for the film. She wanted slides for her own portfolio.
Q And that was okay with you?
A Yes.
Q What did you take that to mean, for her to have the slides for her own portfolio?
A I thought nothing of that.
Q But you understood it to mean, in other words, that she would use the pictures she had taken of your work as part of a professional portfolio as a photographer?
A Yes.
Q And that she would show those pictures to other people?
A Yes.
Q Did you say anything about the circumstances under which she could use the pictures?
A No. These were pictures of clothing that I was selling.
Q Did this include visual art as well as fashion designs?
A No.
Q Which was it, then?
A Fashion design.
Q Was there ever a time when she took photographs of your visual art?
A Yes. She approached me one day and asked me if she would—if I would lend her Aquatint No. 5 for a shooting she had in mind for Dale Bozzio.
Q When was that?
A For Carla Weber and Dale Bozzio. In the summer of '79.
Q Why did she say she wanted to make that shoot?
A My knowledge was she wanted to photograph it for her portfolio.
Q Did you have the same understanding with respect to the photographs she took of Aquatint No. 5 with respect to the photographs she had taken of your works before, in other words, as to the use she could make of them?
A Carla was—Carla—Carla's photographs were always of a very highly artistic nature. And her use of images as a photographer were very artistic. I don't believe her intention in photographing Aquatint No. 5 was for any specific reason, or at least she never let me know of any reason that she—any future reason.
Q You didn't have the same reasons for letting her photograph Aquatint No. 5, I take it, as you did for letting her photograph your fashion designs because she—photographs to advertise your works?
A Which photographs?
Q You were not going to use the photograph of Aquatint No. 5 for the same purpose as you would use photographs of your fashion designs, that is, to show people what you had done?
A That's right. I approached Carla and asked her if she would photograph my fashion design. She approached me to photograph the piece on Dale Bozzio.

also have examined this exhibit. It is in two parts.

One part consists of two pieces of clear plastic material cut in a figure 8 shape. The figure 8 portion is 18 inches in length. The smaller loop of the figure 8 is 6½ inches across. The larger loop is 7½ inches across. Within each loop is a sealed area in the shape of a triangle filled with what appears to be crushed rock in a distinct color. A 70-inch clear plastic tube has been inserted through the end of the smaller loop of the figure 8.

The other section connects two pieces of clear plastic which have been cut into an angular shape with eight sides, wider at the ends and tapering towards the center. It is 15½ inches long and 7½ inches wide at each end. Within this eight-sided piece of plastic are two sealed areas which also contain crushed rock in the same colors present in the figure 8 shaped portion. The center has a width of three inches. Looped into one end of this part is a 75-inch long clear plastic tube. Looped through the other end is a 72-inch clear plastic tube.

The district court made the following findings:

1.) In 1979, plaintiff designed a swimsuit/piece of conceptual artwork entitled 'Aquatint No. 5'.

2.) During 1979, plaintiff furnished one such swimsuit/piece of art to Carla Weber, a photographer.

3.) Weber photographed Dale Bozzio, one member of the rock group Missing Persons, while Bozzio was wearing plaintiff's "Aquatint No. 5."

4.) Weber's photograph of Bozzio wearing plaintiff's "Aquatint No. 5" was reproduced on an album cover of an album by the Missing Persons entitled "Missing Persons."

5.) Copy on the album cover credits Weber with being the photographer of the Bozzio picture and credits plaintiff with being the designer of the swimsuit/artwork worn by Bozzio in the photograph.

6.) In 1982, plaintiff applied for copyright registration for his swimsuit/art-

work; the copyright office refused to register the work.

7.) The present action was instituted in October 1982.

8.) Any Conclusion of Law which is also a Finding of Fact is herein incorporated by reference.

Based on these findings, the district court concluded that "plaintiff's 'Aquatint No. 5' is not copyrightable because the functional aspects of the swimsuit are not independent of the alleged sculptural/artistic aspects of the suit. 17 U.S.C. § 101; 1 M. Nimmer, *Nimmer on Copyright*, § 2.08[H] (1982)." (Conclusion number 5).

### III.

In reviewing a grant of summary judgment, we must consider the evidence in the light most favorable to the party against whom summary judgment is granted. "[W]e must determine *de novo* whether there was no genuine issue of material fact and that the moving party was entitled to judgment as a matter of law." *M/V American Queen v. San Diego Marine Construction*, 708 F.2d 1483, 1487 (9th Cir. 1983).

To prove his claim of copyright infringement, Poe was required to show that the copied article was an original sculptural work. 17 U.S.C. § 102(5). He was also required to show that the article was not useful, or that the "sculptural features ... can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article." *Id.* § 101.

Poe contends that the evidence presented to the district court raised a disputed issue of material fact as to whether his sculptural work was a useful article. We agree.

The only evidence presented by appellees that the article had any utilitarian aspect was the fact that it was worn on one occasion by a woman so that a photograph of Poe's visual art work would be a part of the photographer's portfolio. No evidence was presented to support the district

court's finding that the article which adorned the model could be used as a swimsuit.

As noted above, the only testimonial evidence presented by the appellees concerning the nature of the article in question was Poe's deposition testimony that Aquatint No. 5 was a piece of visual art, and not one of his clothing designs. We have also conducted a visual examination of Poe's creation. Nothing in our legal training qualifies us to determine as a matter of law whether Aquatint No. 5 can be worn as an article of clothing for swimming or any other utilitarian purpose. We are also unable to determine merely by looking at Poe's creation whether a person wearing this object can move, walk, swim, sit, stand, or lie down without unwelcome or unintended exposure.

Thus, even if we assume that the district court's determination that the article was a "swimsuit" was based on its visual examination of Poe's creation, there was evidence in the record that it was an artwork and not a useful article of clothing. The resolution of this critical factual question is for the trier of fact after a trial on the merits.

A "useful article" was defined by Congress as:

> an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article.

17 U.S.C. § 101.

 The evidence presented by both sides at the hearing on the motion for a summary judgment shows that Poe was attempting to create a work of art which portrayed an article of clothing. Whether, in addition, he created an article of clothing which can *function* as a swimsuit is simply not shown by any evidence offered in support of the motion. The most that the record shows is that the district court judge believed that Aquatint No. 5 looks like a swimsuit. Under section 101, Congress, however, requires more than the *portrayal* of the appearance of an article in order to deny copyright protection.

Citing *Fabrica, Inc. v. El Dorado Corp.*, 697 F.2d 890, 892–93 (9th Cir.1983), appellees argue that the usefulness of an article for which copyright protection is sought is a question of law. *Fabrica, Inc.* does not suggest that a dispute as to whether an article is useful must be resolved by the court as a question of law. In *Fabrica,* appellant sought copyright protection for a unique and high quality carpet sample display folder. Fabrica did not contend that its carpet sample display folder was not useful. Instead, it argued that the display folder was entitled to protection as a pictorial, graphic, and sculptural work of art. *Id.* at 892. We upheld a directed verdict in *Fabrica* because, after all the evidence had been presented to the jury, it was undisputed that "[t]he folders' usefulness in marketing is their only reason for existence." *Id.* at 893. We agreed with the district court's finding that the folders lacked "any artistic feature identifiable separately from the utilitarian aspects of the article." *Id.* Therefore, they were not entitled to copyright protection.

Here, as noted above, the uncontradicted evidence presented below established that the only reason for existence of Aquatint No. 5 was as a work of art.

Appellees also rely on *Gay Toys, Inc. v. Buddy L Corp.*, 703 F.2d 970 (6th Cir. 1983), to support their claim that usefulness is a question of law not fact. Appellees have misperceived the issue before the court in *Gay Toys.* The court in *Gay Toys* summarized the question before it as follows: "The issue raised in this appeal is whether toys are copyrightable subject matter under the 1976 Copyright Act, 17 U.S.C. §§ 101–810." 703 F.2d at 971. The district court had concluded as a matter of law that toys were not copyrightable because they are useful in child development. The district court commented that toys "[permit] a child to dream and to let his or her imagination soar." *Gay Toys, Inc. v. Buddy L Corp.*, 522 F.Supp. 622, 625 (E.D. Mich.1981). No factual issue was presented as to whether the copied articles were toys. The Sixth Circuit held in *Gay Toys* that toy airplanes are protectible because

they have no intrinsic utilitarian function other than to portray real airplanes. 703 F.2d at 973.

In the matter before us, the issue before the district court, and now this court, is whether a genuine issue of fact exists as to whether Poe designed a functional swimsuit or a work of art.

We are not persuaded by appellees' argument that there is no evidence which Poe could present that would be relevant to the question of usefulness. We can identify relevant evidence which may be presented to the trier of fact in this matter: (1) expert evidence may be offered concerning the usefulness of the article and whether any apparent functional aspects can be separated from the artistic aspects.[2] *See Trans-World Manufacturing v. Al Nyman & Sons, Inc.,* 95 F.R.D. 95, 99 (D.Del. 1982) (court refused to grant summary judgment on copyrightability of eyeglass display case, stating "such a conclusion should be made by the trier of fact on the basis of expert testimony rather than as a matter of law by this Court"); *Saxony Products v. Guerlain, Inc.,* 513 F.2d 716 (9th Cir.1975) (district judge erred in granting summary judgment after conducting a perfume "sniff test"); (2) evidence of Poe's intent in designing the article may be relevant in determining whether it has a utilitarian function. *See Norris Industries v. International Telephone & Telegraph,* 696 F.2d 918, 922 (11th Cir.1983) ("useful" articles are those "designed primarily to serve a utilitarian function" *quoting Compendium of Copyright Office Practices,* 2.8.1.-I.b.2.); (3) testimony concerning the custom and usage within the art world and the clothing trade concerning such objects also may be relevant. *Cf. May v. Morganelli-Heumann & Associates,* 618 F.2d 1363, 1368 (9th Cir.1980) (in copyright infringement suit brought by architect, genuine dispute as to custom and usage within architectural profession precluded summary judgment); and (4) the district court may also consider the admissibility of evidence as to Aquatint No. 5's marketability as a work of art. *See* 1 M. Nimmer, *Nimmer on Copyright* § 2.08[B], at 2–96.2—2–96.3 (1984) (suggesting that courts might look to see if an article with no utilitarian use would still be marketable to some significant segment of the community simply because of its aesthetic qualities).

Because the district court erroneously concluded that there was no genuine issue of fact as to whether Aquatint No. 5 was a useful item of clothing or a work of art, we must reverse the order granting summary judgment and dismissing the pendent state claims.

The judgment of the district court is REVERSED, and the case is remanded for trial.

**2.** Poe himself may qualify as such an expert in light of his academic training and his experience as an artist *and* as a fashion designer.