The BOYDS COLLECTION, LTD., Plaintiff

v.

The BEARINGTON COLLECTION, INC., Defendant

No. CIV.A.1:02 CV 2083.

United States District Court, M.D. Pennsylvania.

March 21, 2005.

Alan R. Boynton, Jr., Harvey Freedenberg, McNees, Wallace & Nurick, Charles T. Young, Jr., McNees Wallace & Wallace LLC, Harrisburg, PA, Lee Grossman, Michael Cherskov, Thomas J. Motzny, Cherskov and Flaynick, Chicago, IL, for Plaintiff.

Alex S. Fonoroff, Caroline W. Spangenberg, Christopher P. Bussert, Christopher J. Kellner, James J. Leonard, Jerre B. Swann, Kilpatrick Stockton LLP, Atlanta, GA, Heather Paterno, Thomas Edward Brenner, Goldberg, Katzman & Shipman, P.C., Harrisburg, PA, for Defendant.

Elaine D. Solomon, Roger F. Cox, Blank Rome LLP, Philadelphia, PA, for Intervenor.

## *MEMORANDUM*

CONNER, District Judge.

Bears are big business. Revenues in the collectible teddy bear industry approached $1 billion in the late 1990s, in a field consisting of both established companies and relatively small start-ups.[1] Against this competitive backdrop, plaintiff, The Boyds Collection, Ltd. ("Boyds"), seeks to enjoin sales of bears designed by defendant, The Bearington Collection, Inc. ("Bearington").[2] The complaint alleges that several Bearington bears infringe on copyrighted Boyds bears, entitling Boyds to injunctive and monetary relief under federal law.

Presently before the court is a motion for summary judgment by Bearington. It asserts that the Bearington bears are not sufficiently similar to the Boyds bears to permit a finding of copyright infringement. Dozens of the bears at issue have been provided to the court for comparison. Having reviewed these submissions and analyzed governing copyright law, the court concludes that, although there can be no dispute over the bears' adorability, there remains a genuine issue of material fact regarding their similarity. The latter question must be reserved for the jury.

---

**1.** *See* Gita M. Smith, *Business No Mere Barbie, This Is Fabric Sculpture,* ATLANTA J. & CONST., Nov. 18, 1998.

**2.** (Doc. 120, Ex. 1 ¶ 13).

## I. Statement of Facts [3]

Closely spaced black eyes, semi-circular cupped ears, a triangular sewn nose, a protruding shaved muzzle, an inverted "Y"-shaped sewn mouth, blended brown fur, and paw pads: these features combine to make a Boyds bear. A common bear stands approximately eight inches in height and has an arm-span of approximately six inches, although some are a bit bigger. They are stuffed, dressed in distinctive decorative clothing, and given a unique name such as "Leo Bruinski" or "Mr. Baybeary." (Doc. 120 ¶¶ 21–26, at 25–27; Doc. 130 ¶¶ 21–26, at 31–37; see also Doc. 95, Exs. DX45, DX49, DX87, DX91–DX93, DX105–DX112, DX126). The bears sell for approximately $20.00 each.[4]

The "flagships" of the Boyds collection are "Bailey" and "Matthew." These bears, which share the features described above with minor differences in facial characteristics and clothing, were created in 1992 and 1996 by an employee of Boyds. They were copyrighted in 1997. Design elements similar to Bailey and Matthew were later incorporated into other bears, with different clothing. These bears were sub- sequently registered under independent copyrights. (Doc. 120 ¶¶ 4–6, at 21–22; Doc. 120, Exs. 3A–3B, 7A–7K; Doc. 130 ¶¶ 4–6, at 21–22).

Bearington formed in 1997 and designed its first bear, named "Camille," in the same year.[5] Prior to creating Camille, representatives of Bearington reviewed plush bear catalogs and attended several trade shows, but they did not have access to several of the copyrighted Boyds bears until later. It is unclear to what degree Camille shared features of the Boyds bears or whether it represented a significantly different design.[6] Two years later, in 1999, Bearington redesigned Camille with many of the same characteristics as a Boyds bear.[7] (Doc. 94 ¶¶ 16–25; Doc. 120 ¶¶ 16–25, at 7–9; Doc. 121, Ex. 10 at 134–35; Doc. 122, Exs. 20–21; see also Doc. 95, Ex. DX40).

Soon thereafter, Bearington began marketing a series of new bears, many of which resembled the Boyds design. A common Bearington bear has closely spaced black eyes, semi-circular cupped ears, a triangular sewn nose, a protruding shaved muzzle, an inverted "Y"-shaped

---

3. In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to plaintiff, as the non-moving party. See infra Part II.

4. See The Boyds Collection, Ltd., Boyds Bears Plush, Boyds Bears Online, at http://www.boydsbears.com.

5. Counsel for Boyds faults Bearington for including several facts from a "self-serving" affidavit submitted "months after the close of fact discovery." (Doc. 120 ¶ 16, at 6–7). Neither of these complaints is valid. Nothing in the Federal Rules of Civil Procedure excludes "self-serving" evidence; indeed, the adversarial system of adjudication is premised upon the recognition that no party will be disinterested in the result. And Rule 56 specifically contemplates the submission of affi- davits after the close of discovery, as a rough substitute for information that will be provided at trial by live testimony. See FED. R. CIV. P. 56(e).

6. There is a factual dispute regrading the extent to which Camille was redesigned in 1999. (See Doc. 120 ¶ 23, at 9). For purposes of summary judgment, however, the court is bound to give the benefit of all reasonable inferences to Boyds, as the non-moving party. See infra Part II. As such, the court will assume that Camille was significantly redesigned in 1999, after Boyds bears had become available to Bearington for review and potential copying.

7. But, unlike a common Boyds bear (and many other Bearington bears), Camille has pink fur. (See Doc. 95, Ex. DX40).

sewn mouth, blended brown fur, and paw pads. It stands approximately eight inches in height and has an arm-span of approximately six inches, although some are a bit bigger. It is stuffed, dressed in decorative clothing, and given a unique name such as "Jacqueline de Fleur" or "Pappa Christmas." (Doc. 120 ¶¶ 21–26, at 25–27; Doc. 130 ¶¶ 21–26, at 31–37; *see also* Doc. 95, Exs. DX14–DX23, DX25, DX28, DX31, DX34, DX37, DX39, DX42–DX42, DX47, DX50–DX51, DX54, DX67–DX68, PX75). The bears sell for approximately $20.00 each.[8]

In November 2002, Boyds commenced the instant copyright infringement action against Bearington. The complaint alleges that bears marketed by Bearington infringe on fifteen copyrights held by Boyds, including those for the Bailey and Matthew designs. Boyds seeks compensatory and injunctive relief. (Docs. 1, 73). Bearington denies these claims, and moved for summary judgment in November 2004. (Doc. 92).

## II. *Standard of Review*

"Summary judgment serves as a minimal but important hurdle for litigants to overcome before presenting a claim to a jury." *Pappas v. City of Lebanon,* 331 F.Supp.2d 311, 314 (M.D.Pa.2004). Faced with such a motion, the adverse party must produce affirmative evidence, beyond the disputed allegations of the pleadings, in support of the claim. FED. R. CIV. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Corneal v. Jackson Township,* 313 F.Supp.2d 457, 464 (M.D.Pa.2003), *aff'd,* 94 Fed.Appx. 76, 2004 WL 790315 (3d Cir.2004). "Such affirmative evidence—regardless of whether it is

direct or circumstantial—must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Saldana v. Kmart Corp.,* 260 F.3d 228, 231–32 (3d Cir.2001) (quoting *Williams v. Borough of West Chester,* 891 F.2d 458, 460–61 (3d Cir.1989)). Only if this burden is met can the cause of action proceed. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–57, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–89, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see* FED. R. CIV. P. 56(c), (e).

## III. *Discussion*

Copyright law assures authors of "original" creative works that others will not profit from their designs without their approval. *Feist Publ'ns, Inc. v. Rural Tel. Service Co., Inc.,* 499 U.S. 340, 345–56, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991); *see also* U.S. CONST. art. I, § 8, cl. 8; 17 U.S.C. §§ 101–103; 1 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 1.06[A] (2004) (hereinafter NIMMER). To benefit from these protections, the author must register the design with the United States Copyright Office, a division of the Library of Congress. *See* 17 U.S.C. §§ 408, 412, 701. Once approved, a copyright registration permits its owner to enjoin others from marketing the subject designs without permission. *Id.* §§ 411, 501–502. An infringer of a valid copyright is potentially liable for any profits received from sales of the copyrighted design, as well as "actual damages suffered by the owner as a result of the infringement." *Id.* § 504; *see also id.* § 505 (providing for recovery of costs and attorney's fees).

---

8. *See* Evelyn Lager, *Bearington Collection 'Baby Bears' Leave Big Pawprints,* GIFTWARE BUSINESS, Jan.-Feb.2003, *available at* http:// www. bearingtoncollection.com/Articles/03articl.asp.

■ A claim of copyright infringement comprises two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns,* 499 U.S. at 361, 111 S.Ct. 1282. The instant motion for summary judgment challenges both aspects of Boyds's claims. Each will be addressed in turn.

### A. *Ownership of a Valid Copyright*

■ "The *sine qua non* of copyright is originality." *Id.* at 345, 111 S.Ct. 1282. A product is entitled to copyright protection only if it "possesses at least some minimal degree of creativity." *Id.* (citing 1 NIMMER § 2.01[A], [B]). The work need not be wholly novel or entirely removed from prior innovations. *Id.* Indeed, a composite of existing materials may qualify as "original" so long as the aggregation of elements signifies additional creative effort by the author. *Id.* at 347–49, 111 S.Ct. 1282; *see also* 17 U.S.C. § 103. Put simply, a work is generally deemed "original" if it is, to some degree, more than a mere copy of what came before. *See Feist Publ'ns,* 499 U.S. at 358–59, 111 S.Ct. 1282.

■ A presumption of originality attaches to a design previously registered by the Copyright Office.[9] *See* 17 U.S.C. § 410(c). However, this presumption is rebuttable on evidence that the design was not entitled to protection under federal copyright law. *Id.; see also Williams Elec. v. Artic Int'l, Inc.,* 685 F.2d 870, 871–872 (3d Cir.1982). Thus, the copyrighted Boyds bears are presumed original absent proof that the Copyright Office somehow erred in issuing the registrations.

■ Bearington argues that the copyrighted Boyds designs replicate features of bears produced throughout the industry prior to 1990, demonstrating that the Boyds bears are not original. The court cannot agree. While the prior bears—many of which have been introduced into the summary judgment record—share many similarities with the Boyds designs, there are also clear differences between them. The prior bears have different fur than a Boyds bear. They have slightly different facial expressions. They have different styles of arms and legs. (*Compare* Doc. 95, Exs. DX84, DX97–DX104 *with* Doc. 95, Exs. DX87, DX91–DX92). Despite their similarities, the prior bears and the Boyds bears are not so indistinguishable as to defeat the presumption of originality as a matter of law.[10] *See Original Appalachian Artworks, Inc. v. Toy Loft, Inc.,* 684 F.2d 821, 824 & n. 2 (11th Cir.1982); *Kamar Int'l, Inc. v. Russ Berrie & Co.,* 657 F.2d 1059, 1061 (9th Cir. 1981).

■ Bearington further argues that, even if the first Boyds bears were "original," subsequent designs based on these bears, with differences only in clothing, are not. While an author may receive protection for a derivative work—one premised on a previously copyrighted design—the additional elements of the new work must themselves be subject to copyright protec-

---

9. These designs were apparently registered by Boyds within five years of their "first publication." *See* 17 U.S.C. § 410(c) ("In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate.").

10. The court reiterates that these conclusions are reached in the context of a motion for summary judgment, in which the court is bound to view the evidence in the light most favorable to Boyds. *See supra* Part II.

tion. *See Dam Things from Denmark v. Russ Berrie & Co., Inc.*, 290 F.3d 548, 563 (3d Cir.2002); *see also* 17 U.S.C. § 103; 1 NIMMER §§ 3.01, 3.03. A derivative work that adds only non-copyrightable elements to a prior product is not entitled to copyright registration. *See Dam Things*, 290 F.3d at 563. Thus, the validity of the copyrights for the derivative Boyds designs hinges on whether the bears' clothing is entitled to copyright protection.

There is debate over this issue. Copyright law excludes from its protection "useful articles," products that have an "intrinsic utilitarian function" apart from appearance or expression. *See* 17 U.S.C. §§ 101, 102(a)(5). This phrase has been universally interpreted to include all clothing, regardless of differences in design, that may be worn by an individual to cover and protect his or her body. *See, e.g., Whimsicality, Inc. v. Rubie's Costume Co.*, 891 F.2d 452, 455 (2d Cir.1989).[11] However, commentators disagree on whether the definition extends to garments not intended for people, but meant solely for toys or dolls. *See generally* Malla Pollack, *A Rose Is a Rose Is a Rose—But Is a Costume a Dress? An Alternative Solution in Whimsicality, Inc. v. Rubie's Costume Co.*, 41 J. COPYRIGHT SOC'Y U.S.A. 1 (1993). Two letters from the Copyright Office, authored by an agency examiner assigned to review several applications from Bearington, assert that such clothing is not copyrightable. (*See* Doc. 101, Exs. F, G).

■ The statutory definition of "useful articles" belies this interpretation. A

"useful article" is one that has an "intrinsic utilitarian function." *See* 17 U.S.C. §§ 101, 102(a)(5). The clothing on a teddy bear obviously has no utilitarian function. It is not intended to cover embarrassing anatomical aspects or to protect the bear from exterior elements. Rather, it is intended and serves only to modify the appearance of the bear, to give the doll a different "look and feel" from others.[12] Clothing on a bear replicates the form but not the function of clothing on a person. It does not constitute a "useful article" excluded from copyright protection. *Accord Masquerade Novelty, Inc. v. Unique Indus., Inc.*, 912 F.2d 663, 670–72 (3d Cir. 1990) (holding that "animal nose masks" are not useful articles because they "have no utility that does not derive from their appearance"); *Gay Toys, Inc. v. Buddy L Corp.*, 703 F.2d 970, 973 (6th Cir.1983) (holding that toy airplane is not a useful article because, "[o]ther than the portrayal of a real airplane, a toy airplane . . . has no intrinsic utilitarian function").[13]

■ The court recognizes that the contrary interpretation followed by the Copyright Office, as the agency responsible for administering federal copyright law, is entitled to respect as persuasive authority. *See Southco, Inc. v. Kanebridge Corp.*, 390 F.3d 276, 286–87 (3d Cir.2004). But, unfortunately, the two letters offered in support of the agency's view lack any indicia of a reasoned decision-making process. *See United States v. Mead Corp.*, 533 U.S. 218, 228, 121 S.Ct. 2164, 150 L.Ed.2d 292

---

**11.** *See also Poe v. Missing Persons*, 745 F.2d 1238, 1242–43 (9th Cir.1984); *Fashion Originators Guild v. FTC*, 114 F.2d 80, 84 (2d Cir.1940) (L.Hand, J.), *aff'd*, 312 U.S. 457, 312 U.S. 668, 61 S.Ct. 703, 85 L.Ed. 949 (1941); H.R. REP. No. 94–1476, at 55 (1976); Registrability of Costume Designs, 56 Fed. Reg. 56530, 56534 (Nov. 5, 1991); 1 NIMMER § 2.08[H].

**12.** *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767–76, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992).

**13.** *Cf. Poe*, 745 F.2d at 1243 (remanding case for determination of whether stylized bathing suit was "clothing," not entitled to protection, or a "work of art," entitled to protection).

(2001) (stating that deference to agency opinion varies with "the degree of the agency's care, its consistency, formality, and relative expertness, and to the persuasiveness of the agency's position").[14] The letters are merely responses to individual copyright applications by Bearington and are apparently not intended as policy statements with the force of law. They are authored by an examiner in the Copyright Office, not a high-level official, and they do not indicate the source of the interpretation or the manner in which it was reached. Most importantly, the letters provide no rationale or explanation for the agency's construction of the statute. Their value as "persuasive authority," and the deference owed to the agency's interpretation, is thus substantially limited. *See id.*

Moreover, regardless of the level of deference to be accorded, the agency's interpretation fatally conflicts with the plain meaning of the statute. Copyright law provides that all original works are entitled to protection unless they are "useful articles" with an "intrinsic utilitarian function." *See* 17 U.S.C. §§ 101, 102(a)(5). It cannot reasonably be argued that the clothing at issue here, designed solely for teddy bears, has any purpose other than appearance differentiation. These garments undoubtedly fall outside the definition of "useful articles." *See Masquerade Novelty,* 912 F.2d at 670–72; 1 Nimmer § 2.08[H]. The agency's interpretation cannot trump the plain language of the governing statute. *See Christensen v. Harris County,* 529 U.S. 576, 588, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) (noting deference is unwarranted when agency interpretation

conflicts with plain meaning); *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (same).

The Boyds bears that differ from prior designs only with respect to apparel are arguably copyrightable as valid derivatives from the original works. The summary judgment record supports a finding that all of the copyrights at issue are valid.

**B.** *Copying of Constituent Elements of the Work That Are Original*

■ Once a valid copyright has been established, the question becomes whether that copyright has been infringed. Infringement occurs when a competitor appropriates elements of a protected design to produce an article that is substantially indistinguishable from the copyrighted work. *See* 4 Nimmer §§ 13.01–13.03; *see also Ford Motor Co. v. Summit Motor Prods., Inc.,* 930 F.2d 277, 291 (3d Cir. 1991). In other words, the copyright plaintiff must prove both that (1) the defendant copied the protected design and (2) the protected work and the defendant's product are "substantially similar" when viewed from the perspective of an ordinary observer. *See Hamil Am., Inc. v. GFI,* 193 F.3d 92, 99 (2d Cir.1999); *see also Sturdza v. United Arab Emirates,* 281 F.3d 1287, 1295 (D.C.Cir.2002), *cited in Dam Things,* 290 F.3d at 562; 4 Nimmer § 13.01.

**1.** *Copying of the Protected Design*

■ A fundamental prerequisite for copyright infringement is that the defendant "actually copied" the protected de-

---

**14.** *See also Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944) ("The weight [accorded to an administrative] judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consis-

tency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control."), *quoted with approval in Mead,* 533 U.S. at 228, 121 S.Ct. 2164.

sign. *Boisson v. Banian, Ltd.*, 273 F.3d 262, 267 (2d Cir.2001) (quoting *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 747 (2d Cir.1998)), *quoted in Dam Things*, 290 F.3d at 562. A party who independently develops a product, even one that is identical to the copyrighted design, is not and cannot be held liable for sales of the product. *See Feist Publ'ns*, 499 U.S. at 345–46, 111 S.Ct. 1282. Only those who had access to the protected work, and can be reasonably found to have copied from that work, are potentially exposed to an infringement claim.[15] *See Moore v. Columbia Pictures Indus. Inc.*, 972 F.2d 939, 942 (8th Cir.1992); *see also* 4 NIMMER § 13.01[B].

■ Boyds has presented threshold evidence to support a finding of actual copying. Bearington had access to the Boyds bears and, thus, had the opportunity to appropriate elements of the latter's design. An expert witness for Boyds, with extensive experience in the teddy bear industry, opined that the similarities between the Boyds and Bearington bears exhibit clear signs of copying. (Doc. 120, Ex. 1). This evidence is sufficient to allow the issue of copying to proceed to trial. *See Dam Things*, 290 F.3d at 562 (noting that expert testimony is relevant to establish actual copying).

Bearington claims that one of its bears, known as Camille, was designed in 1997, before the company had access to similar bears distributed by Boyds, and that Bearington's subsequent designs are copies of Camille rather than copies of Boyds bears. While these allegations, if proven, would cast doubt on the claims of copying, *see Moore*, 972 F.2d at 942, the court cannot make such a finding on the summary judgment record. Camille admittedly under-

went design modifications in 1999, and Bearington's own employees were unable to state with certainty that the 1999 Camille was substantially a reproduction of the 1997 Camille, particularly with respect to elements common to Camille and the Boyds bears. (*See* Doc. 121, Ex. 10 at 134–35). A reasonable jury could conclude that the 1999 Camille more closely matched the Boyds bears than the 1997 Camille, and that the similarities between the bears marketed by Boyds and Bearington demonstrate copying on the part of the latter company.

### 2. *Substantial Similarity*

■ That a product was copied from a protected design does not, without more, establish actionable infringement. Rather, infringement occurs only when the challenged and copyrighted designs share so many features as to be indistinguishable in "overall look and feel" to the ordinary observer. *Boisson*, 273 F.3d at 272 (quoting *Folio Impressions, Inc. v. Byer Cal.*, 937 F.2d 759, 765 (2d Cir.1991)), *quoted in Dam Things*, 290 F.3d at 562. This standard is generally referred to as the "substantial similarity" test. *See id.; see also* 4 NIMMER § 13.03. It asks whether an "ordinary observer, unless he [or she] set out to detect the disparities [between the two works], would be disposed to overlook them, and regard their aesthetic appeal as the same." *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir.1960) (L.Hand, J.), *quoted in Dam Things*, 290 F.3d at 562.

■ While the substantial similarity test mandates a comparison of the overall aesthetics of the works, it also requires the factfinder to differentiate between protect-

---

**15.** *See Selle v. Gibb*, 741 F.2d 896, 901 (7th Cir.1984) (" [I]f the plaintiff admits to having kept his or her creation under lock and key, it would seem logically impossible to infer access [even] through striking similarity.").

ed and non-protected aspects of the copyrighted design. *Dam Things,* 290 F.3d at 562; *see also Feist Publ'ns,* 499 U.S. at 348–50, 111 S.Ct. 1282; *Boisson,* 273 F.3d at 272–73; *Hamil,* 193 F.3d at 100–02; 4 NIMMER § 13.03[E][1]. Infringement occurs only when a challenged article incorporates those particular elements of the registered design that are protected under copyright law. *See Dam Things,* 290 F.3d at 562. A work that shares only nonprotected elements, such as conceptual ideas or facts, with the copyrighted design does not provide a basis for a claim of infringement. *See Feist Publ'ns,* 499 U.S. at 348–50, 111 S.Ct. 1282. In other words, the similarity in "overall look and feel" between the works must be by virtue of shared protected elements. *Dam Things,* 290 F.3d at 562; *see also Feist Publ'ns,* 499 U.S. at 348–50, 111 S.Ct. 1282; 4 NIMMER § 13.03.

The bears at issue share enough similarities with respect to protected elements to permit this case to proceed to trial. The originality of the Boyds bears stems from the incorporation of several common features, which collectively form a distinctive and recognizable product. Although the individual features of the bears, such as the button eyes and sewn mouth, are used throughout the teddy bear industry and are likely non-protected, they combine in the Boyds bears in a unique way. This aggregation of features is the protected element of the Boyds copyrights. *See Feist Publ'ns,* 499 U.S. at 348–50, 111 S.Ct. 1282.

The Bearington bears share a similar aggregation of features. They have button eyes and sewn mouths in the same layout as Boyds bears. They have noses and muzzles that closely approximate the Boyds bears. The have similar fur and similar clothing. Most importantly, they arguably have the same "overall look and feel" as the Boyds bears, when viewed as a whole. *See Boisson,* 273 F.3d at 272–73. These similarities could suffice to support a finding of actionable infringement.[16] *See id.*

### IV. *Conclusion*

" [G]ranting summary judgment, particularly in favor of a defendant, is a practice to be used sparingly in copyright infringement cases." *Wickham v. Knoxville Int'l Energy Exposition, Inc.,* 739 F.2d 1094, 1097 (6th Cir.1984), *quoted in Sturdza,* 281 F.3d at 1296. This case does not call for an exception to this general rule. Material issues of fact remain outstanding regarding Bearington's access to the Boyds bears and the similarity of the Boyds and Bearington designs. The motion for summary judgment will be denied.

Nevertheless, several issues in this case are appropriate for resolution prior to trial. One of these is the appropriate timespan for assessing damages. The court agrees with Bearington that the three-year statute of limitations period applicable to copyright actions prevents Boyds from recovering damages for infringing sales that occurred more than three years before the filing of the complaint.[17] *See* 17 U.S.C.

---

**16.** *See supra* note 10 (noting deferential standard of review).

**17.** Nothing in the record suggests that Boyds was reasonably unable to recognize the allegedly infringing sales that occurred more than three years before the filing of the complaint as independently actionable at the time. *See Cowell v. Palmer Township,* 263 F.3d 286, 292

(3d Cir.2001) (recognizing applicability of "continuing violations" theory only when it was reasonable for plaintiff not to recognize acts occurring before the limitations period as independently actionable at the time); *see also Makedwde Publ'g Co. v. Johnson,* 37 F.3d 180, 181–82 (5th Cir.1994) (rejecting "continuing tort" theory in copyright context). Indeed, the evidence suggests that Boyds had

§ 507(b). However, Boyds has amended its complaint several times and presented multiple claims based on a myriad of bears. Neither party has identified precisely the point at which the facts underlying each infringement claim were first raised, hindering the court's effort to determine whether later amendments should "relate back" for purposes of the statute of limitations period. *See* FED. R. CIV. P. 15(c); *Bensel v. Allied Pilots Ass'n,* 387 F.3d 298, 310 (3d Cir.2004) (" [A]pplication of Rule 15(c) involves a search for a common core of operative facts in the two pleadings."). Counsel will be expected to review the pleadings in detail, to confer regarding the appropriate limitations on damages, and, if necessary, to submit a renewed motion for partial summary judgment on this issue.

Counsel will also be expected to narrow the matters for submission to the jury. Copyright claims require the factfinder to make a one-to-one comparison between the allegedly infringing product and the copyrighted design. With dozens of bears and hundreds of potentially infringing combinations at issue, this task will quickly become overwhelming for a lay juror. Limiting the number of these comparisons will not only expedite the proceedings but will also ensure that full consideration is given to those claims with the greatest chance of success.

Counsel will be directed to meet and confer for the purpose of reaching agreement on these topics, which will be addressed further at the pre-trial conference. An appropriate order will issue.

### ORDER

AND NOW, this 21st day of March, 2005, upon consideration of defendant's motion for summary judgment (Doc. 92),

and for the reasons stated in the accompanying memorandum, it is hereby OR-DERED that:

1. The motion for summary judgment (Doc. 92) is DENIED.

2. Counsel for the parties shall meet and confer, prior to the final pre-trial conference in this case, for the purpose of reaching agreement on the appropriate limitation on damages and the claims to be submitted to the jury in this case. *See* L.R. 16.3(b).

access to Bearington's "entire plush teddy bear line" after 1997. (Doc. 120 ¶ 56, at 20).