The **BOYDS COLLECTION, LTD.**, Plaintiff

v.

The **BEARINGTON COLLECTION, INC.**, Defendant.

**CIVIL ACTION NO. 1:02–CV–2083.**

United States District Court, M.D. Pennsylvania.

April 15, 2005.

Alan R. Boynton, Jr., Harvey Freedenberg, McNees, Wallace & Nurick, Harrisburg, PA, Lee F. Grossman, Grossman Law Offices, Chicago, IL, Michael Cherskov, Thomas J. Motzny, Albert Y. Tsui, Cherskov & Flaynick, Chicago, IL, Charles T. Young, Jr., McNees Wallace & Wallace LLC, Harrisburg, PA, for Plaintiff.

Alex S. Fonoroff, Caroline W. Spangenberg, Christopher P. Bussert, Christopher J. Kellner, James J. Leonard, Jerre B. Swann, Kilpatrick Stockton LLP, Atlanta, GA, Heather Paterno, Thomas Edward Brenner, Goldberg, Katzman & Shipman, P.C., Harrisburg, PA, Kristin R. Connor, Stephen Dorvee, Arnall Golden Gregory LLP, Atlanta, GA, for Defendant.

## *MEMORANDUM*

CONNER, District Judge.

Presently before the court is a motion by defendant, The Bearington Collection, Inc. ("Bearington"), for partial reconsideration of a memorandum and order denying summary judgment in its favor on the copyright infringement claims of plaintiff, The Boyds Collection, Ltd. ("Boyds"). The court concluded that several of the copyrights at issue, for plush bears differing only with respect to their clothing, are potentially valid because such clothing does not necessarily constitute a "useful article."[1] Bearington argues that this holding improperly contravenes rulings of the United States Copyright Office, the federal agency responsible for administration of copyright law. The court previously rejected this argument, and will reject it again for similar reasons.

■ Copyright law excludes from its protection "useful articles": "[p]ictorial, graphic, and sculptural works" that have an "intrinsic utilitarian function." *See* 17 U.S.C. §§ 101, 102(a)(5); MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT §§ 1.06[A], 2.08 (2004) (hereinafter NIMMER). These works serve purposes independent of expression and, whether standing alone or incorporated into a previously copyrighted design, cannot be validly registered as enforceable copyrights. *See Feist Publ'ns, Inc. v. Rural Tel. Service Co., Inc.*, 499 U.S. 340, 345–56, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991) (noting that the focus of copyright law is on artistic "creativity" as opposed to technological

---

1. A more extensive discussion of this holding is presented in the court's previous decision, *Boyds Collection, Ltd. v. Bearington Collec-* *tion, Inc.*, 360 F.Supp.2d 655 (M.D.Pa.2005), familiarity with which is presumed.

innovation); *Dam Things from Denmark v. Russ Berrie & Co., Inc.*, 290 F.3d 548, 563 (3d Cir.2002) (discussing derivative works). The copyrighted designs at issue here are wholly derivative of previous bears registered by Boyds, except as to their clothing. Thus, whether this clothing is a "useful article" subject to copyright protection is potentially dispositive of the validity of the Boyds copyrights.

The court, when presented with this question in Bearington's motion for summary judgment,[2] answered in the negative. It distinguished clothing for people, which has "universally" been held to fall within the definition of "useful article," from clothing for toys and dolls:

> Clothing [for a person], regardless of differences in design, may be worn by an individual to cover and protect his or her body.... [In contrast, t]he clothing on a teddy bear obviously has no utilitarian function. It is not intended to cover embarrassing anatomical aspects or to protect the bear from exterior elements. Rather, it is intended and serves only to modify the appearance of

the bear, to give the doll a different "look and feel" from others. Clothing on a bear replicates the form but not the function of clothing on a person. It does not constitute a "useful article" excluded from copyright protection.

*Boyds Collection, Ltd. v. Bearington Collection, Inc.*, 360 F.Supp.2d 655, 661 (M.D.Pa.2005) (footnotes omitted).[3]

The court recognized that the Copyright Office apparently follows a contrary interpretation, as indicated in two letters produced by Bearington, under which all clothing—whether for a person or a doll—is deemed to be a "useful article" *per se*. The court also recognized that this interpretation was entitled to deference, as that of the agency responsible for administering copyright law.[4] Nevertheless, the agency's position was rejected for several reasons. The two letters submitted by Bearington do not disclose the source or rationale of the Copyright Office's theory, but merely state its position on the issue.[5] They were authored by an agency examiner, not an official clearly vested with interpretative authority.[6]

---

**2.** See *Interbusiness Bank, N.A. v. First Nat'l Bank of Mifflintown*, 318 F.Supp.2d 230, 235 (M.D.Pa.2004) ("Federal Rule of Civil Procedure 56 mandates that the court view all facts in the light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences.").

**3.** *Masquerade Novelty, Inc. v. Unique Indus., Inc.*, 912 F.2d 663, 670–72 (3d Cir.1990) (holding that "animal nose masks" are not useful articles because they "have no utility that does not derive from their appearance"), *cited in* Registrability of Costume Designs, 56 Fed.Reg. 56530, 56534 (Nov. 5, 1991); *Gay Toys, Inc. v. Buddy L Corp.*, 703 F.2d 970, 973 (6th Cir.1983) (holding that a toy airplane is not a useful article because, "[o]ther than the portrayal of a real airplane, a toy airplane ... has no intrinsic utilitarian function").

**4.** *Boyds*, at 661 (citing *United States v. Mead Corp.*, 533 U.S. 218, 228, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001); *Chevron U.S.A. Inc. v.*

*Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *Southco, Inc. v. Kanebridge Corp.*, 390 F.3d 276, 286–87 (3d Cir.2004)).

**5.** See *Gen. Elec. Co. v. Gilbert*, 429 U.S. 125, 142, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976) (stating that courts should consider the "thoroughness evident in [the agency's] consideration" in assessing proper level of deference) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944)), *quoted with approval in Mead*, 533 U.S. at 228 n. 7, 121 S.Ct. 2164.

**6.** See *Reno v. Koray*, 515 U.S. 50, 61, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995) (stating that an internal agency guideline that is not "subject to the rigors of the [APA], including public notice and comment," is entitled only to "some deference") (internal quotation marks omitted), *quoted with approval in Mead*, 533 U.S. at 228 n. 9, 121 S.Ct. 2164.

And, most problematic, the interpretation proposed in the letters "fatally conflicts with the plain meaning" of the statutory definition of "useful article," as applied in this case.[7] *See id.*

Bearington disagrees. It argues that the rationale for the agency's interpretation was presented in prior administrative rulings, and "need not be reiterated in every objection letter from the [agency]." It complains that, contrary to the court's description, the letters were authored by a "supervisory" examiner in the "Visual Arts Section of the Copyright Office." It characterizes the letters, provided by the agency in response to Bearington's applications to register clothing designs, as "ruling[s] having the force of law" that bind this court. It asserts that clothing on plush bears serves the "utilitarian functions" of protection and preservation and should be considered "useful article" under copyright law. Finally, and with a rhetorical flourish, Bearington claims that the court's decisions "will ... open up a Pandora's box where decisions on copyrightability of articles of clothing [for dolls and people] will depend on whether or not they are deemed to be sufficiently 'useful' or have a sufficiently 'intrinsic utilitarian function.'" (Doc. 154).

■ None of these contentions are meritorious. Obviously an agency may rely on previously expressed rationales in responding to an applicant, without repeating the complete justification for the agency's position. But a justification for the policy, if it is to be accorded substantial judicial deference, should appear somewhere in the court record. *See United States v. Mead Corp.*, 533 U.S. 218, 228–29, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001)

(citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944)). The letters offered by Bearington do not satisfy this condition. They do not provide a rationale for agency's position, and the prior ruling to which they cite—and upon which Bearington seizes—concerns the copyrightability of costumes for *people,* not clothing for *dolls. See* Registrability of Costume Designs, 56 Fed.Reg. 56530 (Nov. 5, 1991). The ruling's conclusion, that costumes for people "fall within the literal definition of useful article" because they serve the "useful function ... [of] clothing the body," *see id.* at 56534, does not suggest that clothing for dolls should be considered "useful articles." To the contrary, this rationale seemingly supports the holding that doll clothing, if employed solely for appearance differentiation, has no "utilitarian function" and falls outside of the statutory definition of "useful article." [8]

■ Similarly unavailing is Bearington's contention that the letters were authored by a "supervisory" official with significant experience in the field. An authoring official's position within an agency is relevant only to the extent that it establishes that person's authority to speak on the agency's behalf. *See Mead,* 533 U.S. at 228–31, 121 S.Ct. 2164; *see also INS v. Aguirre-Aguirre,* 526 U.S. 415, 423–425, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999); *Nations-Bank of N.C., N.A. v. Variable Annuity Life Ins. Co.,* 513 U.S. 251, 256–257, 115 S.Ct. 810, 130 L.Ed.2d 740 (1995). Other gradations within employment, including whether the individual is a supervisor or supervisee, are immaterial to the proper level of deference to be afforded to the proffered interpretation. *See id.* Despite

---

7. *See Mead,* 533 U.S. at 227–29, 121 S.Ct. 2164 (noting that deference is not warranted when agency interpretation is unreasonable under governing law); *Chevron,* 467 U.S. at 842–44, 104 S.Ct. 2778 (same).

8. *Cf. Southco,* 390 F.3d at 286–87 (deferring to Copyright Office position when it "logically extend[ed]" to the issue *sub judice* ).

the "supervisory" position of the author of the letters at issue, nothing in the record indicates that he was vested with rule- or policy-making responsibilities. His opinion is properly viewed as a reflection of standard agency practice, but not more.[9] *See id.*

Bearington's next argument—that the letters have the "force of law" and preclude the infringement claims *sub judice*—is simply wrong. Federal law vests in the Copyright Office the authority to promulgate regulations "for the administration of the functions and duties made the responsibility of the [agency]" under governing statutes. *See* 17 U.S.C. § 702; *see also Cablevision Sys. Dev. Co. v. Motion Picture Ass'n of Am., Inc.*, 836 F.2d 599, 608 (D.C.Cir.1988); *Bonneville Int'l Corp. v. Peters*, 153 F.Supp.2d 763, 771–75 (E.D.Pa.2001). However, the letters at issue were not promulgated under this authority. They do not have the "force of law." *See Christensen v. Harris County*, 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000); *see also Mead*, 533 U.S. at 228–31, 121 S.Ct. 2164; *Southco, Inc. v. Kanebridge Corp.*, 390 F.3d 276, 286–87 (3d Cir.2004). At most, the letters represent individual adjudications of the Copyright Office in response to Bearing-

ton's registration applications. *See* 17 U.S.C. § 410(b); *see also Fed. Employees v. Dep't of Interior*, 526 U.S. 86, 98–99, 119 S.Ct. 1003, 143 L.Ed.2d 171 (1999), *cited in Mead*, 533 U.S. at 230 n. 12, 121 S.Ct. 2164. They are not enforceable against Boyds, which obtained the copyrights at issue in separate agency proceedings, and they do not affect Boyds's statutory right to bring the infringement action *sub judice*.[10] *See* 17 U.S.C. §§ 411, 501–502. Beyond demonstrating standard agency practice, the letters do not bind the court in ruling on these claims. *See Mead*, 533 U.S. at 228–31, 121 S.Ct. 2164; *Christensen*, 529 U.S. at 587, 120 S.Ct. 1655; *Southco*, 390 F.3d at 286 n. 5.

Moreover, the interpretation followed by the Copyright Office, as applied in this case under a view of the record favorable to Boyds,[11] clearly conflicts with copyright law. The clothing for the Boyds bears does not serve to protect the bears from exterior elements. It does not serve to cover indecent aspects of the bears. It does not serve any purpose except appearance differentiation. It has no independent "utilitarian function" and is not a "useful article." The agency's contrary interpretation cannot trump the plain mean-

---

**9.** Somewhat puzzling is the force with which Bearington repeatedly emphasizes that "there is *nothing* in the record indicating that the Copyright Office has taken any other position with respect to the registrability of clothing on dolls and teddy bears." (Doc. 154). The prior opinion of the court expressly recognized that the agency had apparently adopted this position and applied it consistently. *See Boyds*, at 661; *cf. Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 417, 113 S.Ct. 2151, 124 L.Ed.2d 368 (1993) ("[T]he consistency of an agency's position is a factor in assessing the weight that position is due."), *quoted with approval in Mead*, 533 U.S. at 228 n. 8, 121 S.Ct. 2164. The primary reason for the court's rejection of the agency position was not inconsistency in application but inconsistency with governing law. *See Mead*, 533 U.S. at

227–29, 121 S.Ct. 2164 (noting that deference is not warranted when agency interpretation is unreasonable under governing law); *Chevron*, 467 U.S. at 842–44, 104 S.Ct. 2778 (same).

**10.** Indeed, it may be noted that a rejection by the Copyright Office does not even bind the *applicant*, which may still bring an infringement action seeking a judicial determination on copyrightability. *See* 17 U.S.C. § 411(a).

**11.** *See Interbusiness Bank, N.A. v. First Nat'l Bank of Mifflintown*, 328 F.Supp.2d 522, 525 (M.D.Pa.2004) ("[T]he standard of review for a motion for reconsideration relates back to the standard applicable in the underlying decision."); *see also supra* note 2.

ing of the governing statute. *Mead,* 533 U.S. at 227–29, 121 S.Ct. 2164; *Chevron,* 467 U.S. at 842–44, 104 S.Ct. 2778.

■ That clothes for a doll could *hypothetically* have a utilitarian function, such as protection or preservation, does not alter this conclusion. Classification of a design as a "useful article" is not an all-or-nothing proposition; the issue must be addressed on a case-by-case basis. A scale model plane that serves as a child's toy is not a useful article, but a scale model plane that serves as a pilotless military drone likely is.[12] A "fabric design" is a useful article but a "dress design" is not.[13] An "animal nose mask" is not a useful article, but a "lady's hat" is.[14] And, although a swimsuit is generally considered a useful article, it may lose this status if its sole use is as a "work of art."[15] The line between useful article and creative art is gray and cannot often be drawn in distinct strokes. *See* 1 NIMMER § 2.08[H][3] & n. 288; *see also Southco,* 390 F.3d at 289–90 (Becker, J., concurring).[16]

Neither this nor the previous decision expresses an opinion on whether clothing for dolls could ever be considered "useful articles." Unlike an agency policy statement, the judgment of a court is limited to the facts of the case.[17] Nothing in these decisions restricts the Copyright Office's authority to apply existing rules governing the copyrightability of clothing for people. or to promulgate new regulations on clothing for dolls. They merely recognize that, based on the summary judgment record presented by the parties, the clothing for the Boyds bears does not serve a "utilitarian function" and cannot be considered a "useful article."

■ Most importantly, these decisions must be considered in their procedural context. The court's *legal* determination that clothing for dolls is potentially copyrightable does not foreclose further deliberation on the *factual* issue of whether the clothing for the Boyds bears actually serves a "utilitarian function."[18] That the court was unable to make this factual finding at this stage of the proceedings, viewing only the summary judgment record, does not suggest that a jury will be unable to do so, weighing all of the evidence offered at trial. *See Saldana v. Kmart Corp.,* 260 F.3d 228, 231–32 (3d Cir.2001). The denial of Bearington's motion for summary judgment does not affect its right to raise and argue before the jury the alleged invalidity of the copyrights. *See* 4 NIMMER § 13.01[A].

12. *See Gay Toys,* 703 F.2d at 973.

13. *See* 1 NIMMER § 2.08[H].

14. *See Masquerade Novelty,* 912 F.2d at 670–72; H.R. REP. No. 94–1476, at 55.

15. *See Poe v. Missing Persons,* 745 F.2d 1238, 1242–43 (9th Cir.1984).

16. *See generally* Malla Pollack, *A Rose Is a Rose Is a Rose—But Is a Costume a Dress? An Alternative Solution in Whimsicality, Inc. v. Rubie's Costume Co.,* 41 J. COPYRIGHT SOC'Y U.S.A. 1 (1993).

17. This underscores the value of agency policy-making. Official agency positions, issued after notice and comment and supported by legislative policy, deserve significant deference by the courts. *Mead,* 533 U.S. at 227–29, 121 S.Ct. 2164; *Christensen,* 529 U.S. at 587, 120 S.Ct. 1655; *Chevron,* 467 U.S. at 842–44, 104 S.Ct. 2778. *See generally* Thomas W. Merrill & Kristin E. Hickman, *Chevron's Domain,* 89 Geo. L.J. 833 (2001). There is no such policy here.

18. *See* 4 NIMMER § 13.01[A] (citing *Motta v. Samuel Weiser, Inc.,* 768 F.2d 481 (1st Cir. 1985)); *see also Superior Form Builders v. Dan Chase Taxidermy Supply Co., Inc.,* 851 F.Supp. 222, 223 n. 3 (E.D.Va.1994) (citing *Carol Barnhart Inc. v. Econ. Cover Corp.,* 773 F.2d 411 (2d Cir.1985); *Poe,* 745 F.2d 1238), *aff'd,* 74 F.3d 488 (4th Cir.1996).

For these reasons, it is clear that this court's decisions will not lead to the dire consequences—the opening of a "Pandora's box" of frivolous copyright applications—portended by Bearington. Other judicial opinions have cast doubt on the validity of various rules and policies of the Copyright Office, including the registrability of clothing,[19] without having a substantial adverse effect on agency administration. *See, e.g., Bartok v. Boosey & Hawkes, Inc.,* 523 F.2d 941, 946–47 (2d Cir.1975). There is likewise no basis to assume that the decisions in this case will induce a rash of sweeping assaults on agency practice. Those challenges that do arise may be resolved as necessary by the Copyright Office and by the courts. *See* 17 U.S.C. §§ 411, 702.

A "useful article" is one with an "intrinsic utilitarian function." *See* 17 U.S.C. §§ 101, 102(a)(5). On the summary judgment record,[20] the clothing for the copyrighted bears does not serve any purpose other than appearance differentiation. It is not a useful article. The copyrights held by Boyds are potentially valid, and the infringement claims against Bearington may proceed.

An appropriate order will issue.[21]

### ORDER

AND NOW, this 15th day of April, 2005, upon consideration of defendant's motion for reconsideration (Doc. 153), and for the reasons stated in the accompanying memorandum, it is hereby ORDERED that:

1.  The motion for reconsideration (Doc. 153) is DENIED.

2.  Counsel for the parties shall meet and confer, prior to the final pre-trial conference in this case, for the purpose of reaching agreement on the claims to be submitted to the jury in this case. *See* L.R. 16.3(b).

19.  *See Poe,* 745 F.2d at 1242–43, *cited with approval in Leicester v. Warner Bros.,* 232 F.3d 1212, 1216 (9th Cir.2000).

20.  *See supra* notes 2, 11 (stating standard of review).

21.  The court need not devote textual discussion to Bearington's fatuous argument that it is somehow prejudiced by the court's directive that counsel meet and confer in an effort to narrow the issues to be presented to the jury in this case. Neither party could *possibly* be prejudiced—much less "greatly prejudic[ed]" (Doc. 154)—by this order, which merely requires counsel to engage in discussions on the topic prior to the pre-trial conference. *See* L.R. 16.3 (requiring parties to meet and confer prior to pre-trial conference "for the purpose of attempting to enter into agreements with respect to," *inter alia,* the "formulation and simplification of the issues") (incorporating FED.R.CIV.P. 16).