FILED

NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

APR 13 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| LANARD TOYS LIMITED, a Hong Kong corporation; et al., <br><br> Plaintiffs-counter-defendants - Appellees, <br><br> v. <br><br> NOVELTY, INC., an Indiana corporation; et al., <br><br> Defendants-counter-claimants - Appellants. | No. 08-55795 <br><br> D.C. No. 2:05-cv-08406-GW-JWJ <br><br> MEMORANDUM [*] |

Appeal from the United States District Court
for the Central District of California
George H. Wu, District Judge, Presiding

Argued and Submitted October 5, 2009
Pasadena, California

Before: HALL, W. FLETCHER, and CLIFTON, Circuit Judges.

Defendants and appellants Novelty, Inc., Novelty Wholesale, Inc., Novelty

Transportation, Inc. (collectively, "Novelty"), and ExxonMobil Oil Corp.

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

("Exxon") appeal from a judgment of the district court, entered after a five-day jury trial, in favor of plaintiff and appellee Lanard Toys Limited ("Lanard"). The jury rendered a special verdict, finding that Novelty and Exxon infringed Lanard's copyrights and trade dress rights in four of plaintiff's "Prop Shots" line of flying toys—the "Drop Copter," the "High Flyer," the "Stunt Plane," and the "Wild Copters," as well as the packaging for the "Drop Copter"—through Novelty's sale and offering for sale of its "Shoot Copter" and "Pull-N-Launch Plane Set" toys.

Lanard has raised a substantial question about the timeliness of the notice of appeal, which we address in the following section. We conclude, however, that we have jurisdiction pursuant to 28 U.S.C. § 1291, and affirm the judgment of the district court. We also grant Lanard's request for an award of reasonable attorney's fees and costs on appeal, in an amount to be determined on remand.

**I.**

In its original judgment entered on August 3, 2007, the district court awarded Lanard a total of $25,268 as damages and profits attributable to the infringement against all defendants, plus the maximum $150,000 in statutory damages pursuant to 17 U.S.C. § 504(c)(2), jointly and severally against all defendants, based on a jury finding of "willful" infringement by Novelty only. On March 25, 2008, in response to defendants' first post-judgment motion pursuant to

Rule 59(e) of the Federal Rules of Civil Procedure,[1] the district court entered an Amended Judgment in which it, *inter alia*: (1) modified the prior judgment *sua sponte* to relieve Exxon of joint and several liability for the $150,000 award of statutory damages, and to add instead an award of the minimum $200 in statutory damages against Exxon, as recommended by the jury; and (2) entered an award of attorney's fees pursuant to 17 U.S.C. § 505 against Novelty only.

Novelty and Exxon timely filed a second "motion to amend" on April 1, 2008, primarily to challenge the collateral order awarding attorney's fees, but also to challenge the minor substantive change effected by the Amended Judgment with respect to statutory damages. They contended that, under 17 U.S.C.§ 504(c)(1), there could be only a single award of statutory damages for which all defendants found to have infringed should be jointly and severally liable, *see* 4-14 Nimmer on Copyright ("Nimmer"), § 14.04[E][2][d] (2009), and that the district court erred in imposing the $200 statutory damages award separately against Exxon. The district court denied the defendants' second motion to amend on April 30, 2008. Novelty and Exxon jointly filed a notice of appeal on May 7, 2008.

In its answering brief on appeal, Lanard contends that defendants' second

---

[1] All further undifferentiated references to "Rules" are to the Federal Rules of Civil Procedure.

motion to amend the judgment did not toll the time limit in Federal Rule of Appellate Procedure 4(a)(1)(A), and that we lack appellate jurisdiction because the notice of appeal was filed more than 30 days after the district court entered the Amended Judgment. It is a close question, but we reject Lanard's argument.

When the district court substantively alters its original judgment in response to a Rule 59 motion, a second motion to amend, timely filed by a party aggrieved by a substantive amendment to the original judgment, will again toll the time to appeal. *Wages v. I.R.S.*, 915 F.2d 1230, 1233-34 n. 3 (9th Cir. 1990); *Munden v. Ultra-Alaska Assocs.*, 849 F.2d 383, 385-87 (9th Cir. 1988); *Herrington v. County of Sonoma*, 706 F.2d 938, 939 (9th Cir. 1983); *see also Charles v. Daley*, 799 F.2d 343, 347-48 (7th Cir. 1986). In this case, the district court's *sua sponte* decision to modify the statutory damages award effected a minor, but nonetheless substantive, change in the original judgment that started all time periods running anew. *See Charles*, 799 F.2d at 348. Thus, defendants' second motion to amend, timely filed within ten days of entry of the Amended Judgment, again tolled the time to file the notice of appeal. The notice of appeal was timely filed within thirty days of the district court order disposing of the second Rule 59 motion. Accordingly, we have jurisdiction to hear and decide this appeal pursuant to 28 U.S.C. § 1291, and Lanard's request for dismissal is denied.

**II.**

On the merits of the appeal, Novelty and Exxon (collectively, hereafter, "appellants") raise five distinct claims of error. We will address each one in turn.

**A.**

Appellants first contend that the district court erred in rejecting their argument that Lanard's "Drop Copter" toy and the launcher handle of Lanard's "Wild Copters" and "Stunt Plane" toys are, as a matter of law, uncopyrightable "useful articles" as that term is defined in the Copyright Act. *See* 17 U.S.C. §§ 101, 113(b).[2] As relevant here, the district court rejected this argument twice: first, when it ruled on the parties' cross-motions for summary judgment, *see Lanard Toys Ltd. v. Novelty Inc.*, 511 F.Supp.2d 1020 (C.D. Cal. 2007); and again, in denying appellants' post-judgment Rule 50 motion, when it specifically found that substantial evidence supports the jury's findings of valid copyrights in all four

---

[2] Appellants do not challenge the validity of Lanard's copyrights in the packaging of the "Drop Copter" toy, or the toy airplanes in Lanard's "High Flyers" and "Stunt Plane" sets. Assuming the copyrightability of the "Drop Copter" toy, and the launcher handle of the "Wild Copters" and "Stunt Plane" sets, appellants do not challenge the jury's findings that they *infringed* Lanard's copyrights in all four toys by offering for sale and selling their "Shoot Copter" (which is a knock-off of the "Drop Copter" toy) and their "Pull-n-Launch Plane Set" (which includes toy airplanes that are knock-offs of those designed by Lanard for their "High Flyers" and "Stunt Plane" toy sets). Appellants do not challenge any of the jury's findings as to Lanard's trade dress claims.

of the Lanard toys. There was no reversible error in these rulings.

In denying appellants' motion for summary judgment, the district court found there was a genuine issue of material fact whether Lanard's toys are uncopyrightable "useful articles." *Lanard Toys Ltd.*, 511 F.Supp.2d at 1036-37 & n.12. We lack jurisdiction to review the order denying appellants' motion for summary judgment, as that ruling was superseded by the judgment after a full trial on the merits. *See Price v. Kramer*, 200 F.3d 1237, 1243 (9th Cir. 2000).

We do have jurisdiction, however, to review the district court's ruling on appellants' post-judgment Rule 50 motion, as well as the jury verdict, both of which rejected appellants' argument on this point. We review de novo the district court's denial of a renewed motion for judgment as a matter of law. *See Josephs v. Pacific Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006). We ask whether the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict. *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002). We review the jury's verdict to determine whether substantial evidence supports it. *See Hangarter v. Provident Life and Accident Ins. Co.*, 373 F.3d 998, 1008 (9th Cir. 2004).

Numerous courts have recognized that various types of toys can qualify for copyright protection, in whole or in part, as "pictorial, graphic or sculptural works"

as defined by 17 U.S.C. § 101, even where there is some mechanical or functional element to the toy.  *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir. 1985) ("transformer" changeable robotic action figures held copyrightable as sculptural works); *Gay Toys, Inc., v. Buddy L Corp.*, 703 F.2d 970, 973 (6th Cir. 1983) (toy airplanes are not uncopyrightable "useful articles" because they have no intrinsic utilitarian function other than to portray real airplanes); *Spinmaster, Ltd. v. Overbreak LLC*, 404 F.Supp.2d 1097, 1102-04 (N.D. Ill. 2005) (although its motor and main propeller were uncopyrightable "functional" elements, the hub, blades, and outer ring of a flying saucer toy, as well as the design of a separate controller and base station, were "artistic" elements subject to copyright protection); *see also Masquerade Novelty, Inc. v. Unique Indus., Inc.*, 912 F.2d 663, 670-72 (3d Cir. 1990) ("animal nose masks" are copyrightable as sculptural works); *Rushton v. Vitale*, 218 F.2d 434, 436 (2d Cir. 1955) (chimpanzee doll modeled after television character held copyrightable); *Boyds Collection, Ltd. v. Bearington Collection, Inc.*, 365 F.Supp.2d 612, 616-17 (M.D. Pa. 2005) (stuffed bear's clothing held copyrightable); *and see generally* 1-2 Nimmer § 2.18[H][1].

The determination whether a toy is a pictorial, graphic, or sculptural work, and not an uncopyrightable "useful article" is a fact-intensive one that must be decided on a case-by-case basis, and is properly submitted to the jury for resolution

when there is a genuine factual dispute.  *See Poe v. Missing Persons*, 745 F.2d 1238, 1242 (9th Cir. 1984); *Boyds Collection, Ltd.*, 365 F.Supp.2d at 617 ("Classification of a design as a 'useful article' is not an all-or-nothing proposition; the issue must be addressed on a case-by-case basis. … The line between useful article and creative art is gray and cannot often be drawn in distinct strokes.")  We agree with the district court that substantial evidence supports the jury's finding of valid copyrights in Lanard's "Drop Copter" and the handle of the "Wild Copters" and "Stunt Plane" toys, and that appellants were not entitled to a judgment that those toys were, as a matter of law, uncopyrightable "useful articles" with no "pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article."  *See* 17 U.S.C. §101.

Novelty's only argument for rejecting the jury's finding of a valid copyright in Lanard's "Drop Copter" is a claim that the toy is merely a "functional" or "utilitarian" slingshot that propels other toys—miniature helicopter or airplane propellers—into the air.  We disagree.  Like the toy airplanes in *Gay Toys*, 703 F.2d 970, the two major components of the "Drop Copter" toy are miniature, fanciful renderings of helicopters that are launched together into the air by means of the third piece—a straight plastic rod with a rubber band attached to one

end—and then separate from one another mid-flight and spin to the ground. A child can make the toy "copters" fly high into the air, but that "flight" is simply a portrayal of the real objects, and the toys are not capable of actually flying, or transporting people or supplies, like real helicopters. *See id.* at 973.

A somewhat closer question is presented as to the validity of Lanard's copyrights in the "Wild Copters" and "Stunt Plane" toys—and, in particular, the launcher handle included with those toys. We agree with the district court, however, that the jury's finding that Lanard met its burden of proving the validity of its copyrights in these toys was supported by substantial evidence. First, by introducing into evidence a copyright certificate, Regis. No. VA 656-310, showing that the "Wild Copters" toy was registered by the Copyright Office in 1994, well within five years after first publication of the work, Lanard established the presumptive validity of its copyright in that toy.[3] 17 U.S.C. § 410(c); *see also* 3-12 Nimmer § 12.11[B] (2009). The presumption was reinforced with testimony from Mark Tebbe, a senior level designer and later director of product design at Lanard,

---

[3] It is also significant that this 1994 registration was accomplished before the date on which defendants began selling infringing copies of Lanard's toys because it was the only registration that could support an award of statutory damages for "willful" infringement. *See* 17 U.S.C. §§ 412, 504(c)(2). Registrations for the other toys were not completed by Lanard until November 2005, more than five years after first publication, and after Novelty started selling the infringing toys.

who testified that he had developed the design for the "Wild Copters" in the early 1990s, and could have designed it in "a million" other ways so long as the launching mechanism could fit inside.  In sustaining the jury's finding on this issue when it denied appellants' post-judgment Rule 50 motion, the district court noted that appellants did not present any expert testimony or other relevant evidence to prove that any functional elements of these toys were not subject to copyright protection, *see Poe,* 745 F.2d at 1243, or to overcome the statutory presumption of validity of Lanard's copyrights in the "Wild Copters" toy.[4]  The district court did not err in this regard.

**B**.

Appellants next contend that the jury's finding of "willful" copyright infringement by the Novelty defendants is not supported by substantial evidence. We disagree.

---

[4] As Nimmer explains,  "[U]nlike a patent claim, a claim to copyright is not examined for basic validity before a certificate is issued. … There is one important respect, however, in which the Copyright Office does perform a substantive examination within its particular expertise to determine validity: whether the work falls within the subject matter of copyright.  The Office will register only works as to which, 'after examination,' it determines that 'the material deposited constitutes copyrightable subject matter…' " 3-12 Nimmer § 12.11[B][3] (citing 17 U.S.C. § 410(a)).  Accordingly, the district court did not err by instructing the jury that appellants bore the burden of proving that any functional elements of Lanard's toys were not subject to copyright protection, and that any similarity between their products and Lanard's works were limited to such functional elements.

Whether or not Lanard was required to prove the Novelty defendants had actual knowledge that they were infringing valid copyrights by selling their "Shoot Copter" knock-off of Lanard's "Drop Copter" toy, and the "Pull-N-Launch Plane Set" that obviously copied several of the features of Lanard's "High Flyer," "Stunt Plane," and "Wild Copters" toys, there was substantial evidence to support the jury's finding of "willful" copyright infringement by these defendants. This included evidence of the *exactitude* with which the infringing toys copied Lanard's designs—a fact that was easily confirmed by the jury through its direct observation of the toys admitted into evidence, and through testimony from Lanard's lay and expert witnesses. There was also proof that Novelty had willfully infringed the copyrights of other toy companies, including Disney, Volkswagen, Oakley, Jakks Pacific, Haas Outdoors, Billy Bob, and Tekky Toys.[5] *See, e.g.*, *Canopy Music Inc. v. Harbor Cities Broad., Inc.*, 950 F.Supp. 913, 915-16 (E.D. Wis. 1997)

In addition, there was testimony from Novelty's president, Todd Green, from which the jury could infer that the Novelty defendants actually knew, or recklessly disregarded or were "willfully blind" to facts that would have caused a reasonable person to know, that they were infringing valid copyrights. Green

---

[5] The district court initially ruled that such evidence would be excluded as "extremely prejudicial," but let it in after Novelty opened the door.

admitted in deposition, and was ultimately forced to admit at trial, that China's toy manufacturing industry is a "den of piracy."[6] It was also obvious from the evidence presented at trial that Concord—the Chinese company from which Novelty claims it initially purchased knock-off versions of Lanard's "Drop Copter" (i.e., Concord's ironically named "Welcome to Use our Products" toy) and knock-off components from Lanard's "Wild Copters," "High Flyers," and "Stunt Plane" sets (combined in Concord's "Super Plane" set)—had boldly copied Lanard's products. Yet Green effectively admitted that his company actively participated in Concord's infringement by "Americanizing" the Concord products in such a way that the jury could reasonably infer that Novelty was attempting to conceal the particulars of Concord's blatant copying of Lanard's products.

Green also admitted that Novelty does not normally make copyright checks for goods purchased in China, and specifically did not do so in this case. Had Novelty or its counsel made even the most modest effort to do so before it began selling the "Pull-N-Launch Plane Set," however, it might well have discovered Lanard's 1994 registration of the "Wild Copters" toy, Regis. No. VA 656-310—which included the distinctively-shaped launcher handle that was copied

---

[6] After initially denying that he was aware of rampant piracy in the toy industry in China, Green was impeached on this point with his own deposition testimony.

*exactly* in both the "Pull-N-Launch Plane Set" and the earlier Concord version of that toy, the "Super Plane" set. The jury could also infer willfulness from Novelty's admitted practice of sending samples of "hot products" found in U.S. retail establishments to its Chinese vendors to copy and package as Novelty toys, without asking permission from the sellers or creators of the toys.

Viewed in its entirety, the evidence presented at trial was sufficient to support both the jury's finding of willful copyright infringement by Novelty, and the district court's decision to deny appellants' post-judgment motion for judgment as a matter of law on this issue.

**C.**

Appellants further contend that Lanard made a final and binding election of statutory damages on November 1, 2006, and that the district court abused its discretion by allowing Lanard to present evidence of actual damages at trial on certain of its claims for copyright and trade dress infringement. Again, we disagree.

In denying appellants' motion in limine to exclude evidence of actual damages, the district court specifically found that Lanard clarified that it was seeking statutory damages as to only some of its copyright claims by timely filing an *amended* notice of election on November 20, 2006, and that the defendants thereafter did not object to the amended notice or seek additional discovery on the

-13-

issue of actual damages for the remaining claims—even though discovery was still ongoing. Appellants' claim that they were prejudiced by Lanard's amendment of its election, or that they detrimentally relied on the initial notice, was properly rejected. Trial did not commence until May 25, 2007, more than six months after Lanard filed its amended notice, and appellants could have sought leave to conduct further discovery or to have their motion to compel heard. In these circumstances, the district court did not abuse its discretion by allowing Lanard to present evidence of actual damages at trial.

**D.**

Appellants next contend that the jury's findings of liability for copyright infringement as to Novelty Wholesale, Inc., and Novelty Transportation, Inc., are not supported by substantial evidence. We reject this argument.

The transportation and distribution of infringing copies of copyrighted works from one location to myriad sales points materially contributes to the improper conduct of the direct infringer, and there was substantial evidence from which the jury could infer that in performing such services for Novelty, Inc., both Novelty Transportation and Novelty Wholesale acted with knowledge of the infringing activity, or could fairly have such knowledge imputed to them. *See Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701, 727 (9th Cir. 2007) (citing

-14-

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt, Inc.*, 443 F.2d 1159, 1162 (2nd Cir. 1971)). This included evidence that Novelty, Inc., was their sole customer; Green owned and was an officer of all three corporations, and was actively involved in their operations; and the three companies jointly realized revenue from the infringing activities. *See Perfect 10*, 487 F.3d at 727. The district court did not err in denying appellants' post-judgment motion on this issue.

**E.**

Finally, appellants contend that the district court abused its discretion by allowing Lanard's expert, Howard Marylander, to testify at trial, because his full expert report was not disclosed by September 15, 2006, the deadline set by the court for expert disclosures. Lanard does not dispute that it technically violated Rule 26(a)(2)(B) by not serving Marylander's full expert report by that date. Lanard argues, however, that the district court acted within its discretion in allowing Marylander to testify at trial.

Appellants correctly note that Rule 37(c)(1), as implemented through the 1993 amendments, was intended to foster stricter adherence to discovery requirements and to broaden the power of the district courts to sanction violations of Rule 26. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Rule 37(c)(1) did not, however, strip the district courts of

discretion to allow expert testimony in appropriate circumstances; to the contrary, it contains an express exception under which a failure timely to serve an expert report may be excused if the failure was substantially justified or is harmless. *Yeti by Molly*, 259 F.3d at 1106-07. Among the factors that may properly guide a district court in determining whether a violation of a discovery deadline is justified or harmless are: (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence. *See David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003). The burden is on the party facing exclusion of its expert's testimony to prove the delay was justified or harmless. *Yeti by Molly*, 259 F.3d at 1107.

We agree with Lanard that its violation of Rule 26(a)(2)(B) did not cause prejudice to appellants or any unfairness in the trial. Although Lanard did not strictly comply with the requirements of that Rule by the disclosure deadline, it did timely serve a "preliminary" expert declaration containing detailed information about Marylander's background and expertise, a copy of his curriculum vitae, a list of representative cases in which he had testified, a listing of the materials reviewed in support of his declaration, and a statement of his scope of work for this case. Lanard then served a "supplemental" expert declaration that fully satisfied Rule

26(a)(2)(B) on October 23, 2006—more than three weeks before the cut-off date for expert discovery, and more than seven months before the date set for trial.

Appellants, for their part, made no effort whatsoever to depose Marylander, even though they continued to use the ongoing discovery process to compel production of other evidence with which they would attempt to impeach him at trial. Not only was Marylander's anticipated testimony not a "surprise" to appellants, they were obviously able to take steps they thought necessary to contend with his testimony at trial. In these circumstances, we conclude the district court did not abuse its discretion or otherwise err by allowing Marylander to testify at trial.

## III.

Because we affirm the jury's finding of willful infringement of Lanard's copyright and trade dress rights by Novelty, an award of reasonable attorney's fees incurred by Lanard in this appeal is appropriate only as against those appellants. 15 U.S.C. § 1117; *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 821 (1st Cir. 1987) (award of reasonable attorney's fees is appropriate where justified by equitable considerations, including where the acts of infringement were "willful"). An award of reasonable attorney's fees on appeal is also appropriate in this case pursuant to 17 U.S.C. § 505, to further the purposes of the Copyright

Act—i.e., to protect copyrights and deter infringement.

## IV.

For the foregoing reasons, Lanard's request for dismissal of the appeal is **DENIED**, and the judgment of the district court is **AFFIRMED**. Lanard shall recover its reasonable attorney's fees and costs incurred on appeal, in an amount to be determined by the district court on remand.

*Lanard Toys Ltd. v. Novelty, Inc.*, No. 08-55795

CLIFTON, Circuit Judge, dissenting:

I respectfully dissent. I conclude that Lanard's Drop Copter toy and the launcher handles of its Wild Copters and Stunt Plane toys are uncopyrightable "useful articles" under 17 U.S.C. § 101. The evidence, even when construed in the light most favorable to Lanard, reasonably permits only this conclusion, which is contrary to the jury's verdict. *See Pavao v. Pagay*, 307 F.3d 915, 918 (stating this standard of review for a denial of a renewed Rule 50 motion for judgment as a matter of law). I believe, therefore, that we should reverse the district court's denial of Novelty's Rule 50 motion as to the copyrightability of these toys.[1] The jury likely perceived Novelty as a willful vendor of flagrant knock-offs coming from China, described at trial, as the majority notes, at 11, as a "den of piracy." Even so, Lanard has no right to copyright remedies if the toys Novelty imitated are not among the works that the Copyright Act protects. They are not, and the jury

---

[1] The uncopyrightability of the Wild Copters launcher handle—the only work registered before Novelty began selling its toys, and thus the only basis for statutory damages under 17 U.S.C. § 412—requires that we reverse the judgment on this infringement claim (along with the others related to uncopyrightable toys) and vacate Lanard's statutory damages award. Novelty argues that we must also vacate the finding that Lanard was a prevailing party and order the payment of costs, including attorney's fees, incurred by Novelty since its Rule 68 Offer of Judgment. I would remand the case to the district court to resolve these subsidiary issues in the first instance.

misapplied the law in concluding otherwise.

The majority deems the Drop Copter and launcher handles copyrightable as "sculptural works." The portion of 17 U.S.C. § 101 that extends copyright to this category of works reads:

> "Pictorial, graphic, and sculptural works" include two-dimensional and three-dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions, maps, globes, charts, diagrams, models, and technical drawings, including architectural plans. Such works shall include works of artistic craftsmanship insofar as their form but not their mechanical or utilitarian aspects are concerned; the design of a useful article, as defined in this section, shall be considered a pictorial, graphic, or sculptural work only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.

17 U.S.C. § 101. "Useful article" is defined as "an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information." *Id.*

As the Sixth Circuit recognized in *Gay Toys, Inc. v. Buddy L Corp.*, 703 F.2d 970 (6th Cir. 1983), the above-quoted language defines the category of "pictorial, graphic, and sculptural works" that are eligible for copyright protection in a three-step logical process: first, "copyright protection is extended to 'pictorial, graphic, and sculptural works' generally"; then, "an exception to this general rule

is carved out by exempting 'useful articles' from copyrightability"; and, finally, "nevertheless, certain particular features of 'useful articles' [i.e., those "that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the [useful] article"] may be separately copyrighted." *Gay Toys*, 703 F.2d at 972.

Assuming that they qualify as sculptures generally, the Drop Copter and the launcher handles are plainly "useful articles" subject to the statute's exception, because they have "intrinsic utilitarian function[s]" that are unrelated to merely portraying their own appearances. The Drop Copter uses an elastic slingshot to launch plastic spinners into the air. The Wild Copters and Stunt Plane launcher handles serve—as their very description as "launcher handles" suggests—as places to grasp the mechanisms that launch the toys into the air.

These "intrinsic utilitarian function[s]," which do not "merely . . . portray the appearance of the article[s] or . . . convey information," differentiate the toys (and toy components) in this case from the toy airplane in *Gay Toys*. The *Gay Toys* court held that the toy airplane before it was not a "useful article" because it was "merely a model which portrays a real airplane." *Gay Toys*, 703 F.2d at 973. The only "use" attributed to the model airplane in *Gay Toys* was to "permit[] a child to dream and to let his or her imagination soar." *Id*. The *Gay Toys* court

-3-

rightly recognized that inspiring imagination should not make an object "useful." Paintings and other pieces of pure art (to which Congress clearly extended copyright) have similar imagination-stoking "uses" that would bring them within the "useful article" exception if "use" were defined so broadly. That approach "would have the 'useful article' exception swallow the general rule." *Id.*

In contrast, however, the toys here do more than serve as models. They actually launch objects into the air. The portions of the toys that exist to accomplish this flight have more concrete utilitarian functions than the *Gay Toys* plane that properly bring them within the "useful article" exception.[2]

---

[2] The majority misunderstands the Drop Copter's relevant utilitarian function. It does not matter that the Drop Copter propellers are "not capable of actually flying, or transporting people or supplies, like real helicopters," majority memo. at 9, because no one claims that this is their intended or actual function. The Drop Copter's "intrinsic utilitarian function" is to launch a pair of plastic propellers into the air to entertain children.

The majority also misses important distinctions when it analogizes the Drop Copter—a functional object—to the toy airplane in *Gay Toys*—a mere model. The majority asserts that the Drop Copter's flight "is simply a portrayal of [a real helicopter]," majority memo. at 9, in the same sense that "a toy airplane is merely a model which portrays a real airplane." *Gay Toys*, 703 F.2d at 973. The analogy fails in two ways: (1) the *Gay Toys* plane was (as far as the opinion's description of it suggests) a closer approximation of its real-life analogue than the unadorned propeller pieces of the Drop Copter are of a real helicopter, and (2) the model plane's "portrayal" of a real plane depended exclusively on the form of the sculptural work itself; there is no reason to think that the copyright statute's definition of a "sculptural work" encompasses physical movement of a sculpture in the world. "[P]ortrayal of the real objects" through "'flight,'" majority memo. at 9 (discussing how these toys merely portray their real-world equivalents), is a

The question in this case—not reached in *Gay Toys*, because there the Sixth Circuit held that the toy airplane was not a useful article[3]—is whether elements of the designs of the Drop Copter and launcher handles are separately copyrightable despite the utilitarian functions of these articles. "[T]he design of a useful article . . . shall be considered a . . . sculptural work only if, and only to the extent that, such design incorporates . . . sculptural features that *can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article*." 17 U.S.C. § 101 (emphasis added); *see also, e.g.*, *Chosun Int'l, Inc. v. Chrisha Creations, Ltd.*, 413 F.3d 324, 328 (2d Cir. 2005) ("[I]f a useful article incorporates a design element that is physically or conceptually separable from the underlying product, the element is eligible for copyright protection.").

Inspection of these toys compels the conclusion that there are no sculptural features of the Drop Copter toy or the launcher handles that "can be identified separately from, and are capable of existing independently of, the utilitarian aspects of" these articles. The physical forms of the Drop Copter and launcher

---

different kind of "portrayal" than strictly form-based imitation, precisely because it integrates the object's *function* into the so-called portrait.

[3] "[B]ecause we conclude that the Air Coupe is not a 'useful article,' we need not consider whether certain aspects of the item are copyrightable individually as separate and independent features." *Gay Toys*, 703 F.3d at 974.

-5-

handles are about as close to purely functional as possible. Virtually every physical feature of the Drop Copter toy is directed by its intended use: to launch the "copter" from an elastic band and fly through the air. Lanard does not even attempt to point out specific sculptural features of the Drop Copter that are separably identifiable and independent of its utilitarian aspects; it would be all but impossible to do so, because the Drop Copter has no "design element[s]" that come remotely close to satisfying this standard.

The sculptural features of the Stunt Plane and Wild Copters launcher handles are similarly utilitarian. A toy airplane might inspire a child to dream, but I doubt that any child ever dreams about one of these launcher handles—or even looks at it except to use it. The standard handle shape conforms to the natural shape of a human hand to facilitate grasping. Grooves on the handles improve a user's grip. It is difficult to identify any sculptural features of the handles beyond their basic shape and grooves, and Lanard makes no attempt to do so. That no feature of the launcher handles is—or even purports to be—expressive or artistic leaves these handles a far cry from the sort of decorative components of useful articles that courts have found eligible for copyright protection. *See, e.g.*, *Mazer v. Stein*, 347 U.S. 201, 202 (1954) (holding that "statuettes of male and female dancing figures made of semivitreous china" are copyrightable despite their use as bases for table

-6-

lamps); *Kieselstein-Cord v. Accessories by Pearl, Inc.*, 632 F.2d 989, 990 (2d Cir. 1980) (holding that belt buckles "cast in precious metals—decorative in nature and used as jewelry is, principally for ornamentation" and cast from specially handcrafted molds are copyrightable); *see also Fabrica Inc. v. El Dorado Corp.*, 697 F.2d 890, 893 (9th Cir. 1983) ("[I]f an article has any intrinsic utilitarian function, it can be denied copyright protection except to the extent that its artistic features can be identified separately and are capable of existing independently as a work of art.").

Even with respect to the Wild Copters launcher handle—where the copyright registration certificate established the presumptive validity of the copyright in that toy—Novelty carried its burden of establishing that the launcher handle was an uncopyrightable useful article by introducing the toy itself into evidence. With the toy and other submitted evidence (such as testimony about the utilitarian function of the handle's grooves) before it, a jury, applying the copyright statute's legal standards faithfully, could reasonably only conclude that the handle was a useful article and that no sculptural feature of it was independently copyrightable. Novelty was not required, as the majority suggests, at 10, to introduce any more evidence than it did to make this conclusion unavoidable. That this court in *Poe v. Missing Persons*, 745 F.2d 1238, 1243 (9th Cir. 1984),

-7-

"identif[ied] [four types of] relevant evidence which may be presented to the trier of fact" to establish whether an article is functional or a work of art did not make the presentation of evidence in those four illustrative categories mandatory. Novelty, therefore, did not automatically fail to carry its evidentiary burden simply because it relied on other sufficient evidence (the toys themselves, and testimony about their sculptural features) instead of any of the four types of proof this court happened to enumerate in *Poe*.

Although I favor reversal of the jury's verdict here, I generally agree with the majority that the classification of useful articles is a fact-intensive, case-by-case determination that is typically best left to a jury. In closer cases, where the line between useful articles and art is fuzzy, a jury should make the difficult call, and the call it makes should be entitled to deference. In this case, however, I see no reasonable way that the jury could have applied the statutory standards to the toys at issue and reached the conclusion that it did.

We should reverse the district court's denial of Novelty's motion for judgment as a matter of law insofar as it held that copyright protects these toys.