**NOT FOR PUBLICATION**



**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP NO. EC-15-1405-MaJuKu |
| ALVIN L. SOUZA, JR. and ROBYN G. SOUZA, | BK. No. 14-12200 |
| Debtors. | Adv. No. 14-01082 |
| MILLER HAY AND TRUCKING, INC., | |
| Appellant. | |
| v. | **M E M O R A N D U M**[1] |
| ALVIN SOUZA, JR.; ROBYN SOUZA, | |
| Appellees. | |

Argued and Submitted on October 20, 2016
at Sacramento, California

Filed - November 17, 2016

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable Frederick E. Clement, Bankruptcy Judge, Presiding

Appearances:   Kevin Gerard Little argued for appellant; Joseph R. Beery argued for appellees.

Before: JURY, KURTZ, and MARTIN,[2] Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R.App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

[2] Hon. Brenda K. Martin, Bankruptcy Judge for District of Arizona, sitting by designation.

Before the Panel is Miller Hay & Trucking Inc.'s (MHT) appeal of the bankruptcy court's judgment which held that the debt created when MHT and the Debtors entered into agreements to settle a debt in January and April 2014 was not excepted from discharge under 11 U.S.C. § 523(a)(2)(A). For the reasons stated below, we AFFIRM.[3]

## I. FACTS

The facts are largely undisputed. Whether the bankruptcy court's discovery and evidentiary rulings were correct are hotly contested.

### A. The Settlements

Prepetition, MHT delivered hay to the Debtors' dairy, resulting in an asserted claim of approximately $194,000. Based on the debt, MHT sued the Debtor in California Superior Court (State Court).

On January 22, 2014, the parties engaged in settlement negotiations, eventually reaching an agreement that they placed on the record before the State Court (January Agreement). Key provisions of the January Agreement included: 1) the delivery by the Souzas of a $20,000 check payable to MHT by January 31, 2014; and 2) the turnover by the Souzas of 35 "reasonably healthy beef animals" to be made available for turnover on January 31, 2014. As to the cows, the Debtors were to make a good faith effort to

---

[3] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, "Rule" references are to the Federal Rules of Civil Procedure, "Bankruptcy Rule" references are to the Federal Rule of Bankruptcy Procedure, and "FRE" references are to the Federal Rules of Evidence.

determine that they were more than four years old. MHT had the option, at its own expense, to have a veterinarian examine the animals to verify that they were not greater than four years old and that they were reasonably healthy, and MHT would have the right to reject the animals if they were not.[4]

---

[4] From the January 22, 2014, hearing:

THE COURT: 11:01 AM On record once again in Miller Hay .... And I believe we do have a resolution. So who wishes to begin reciting?
...
MR. FARLEY: So I believe the resolution is as follows: My client will deliver to Mr. Little's office a check payable to Miller Hay in the amount of $20,000 no later than close of business January 31st, 2014. In addition, my client will segregate at the dairy site 35 animals. That they will make a good faith effort to determine those animals are not greater than four years old. But I want to advise the Court, I don't mean to be facetious, but animals don't come with birth certificates. So we will do a good-faith effort they are not going to be more than four years old. And they will be reasonably healthy beef animals. In other words, generally speaking, to a dairyman that means the animal is no longer giving good milk or not milking. And then I understand that Mr. Little's client wishes that at his own expense, their own expense, to have a veterinarian examine the animals. If for some reason they opt to reject the animals, then the parties will have to meet and confer through their lawyers to project -- through their lawyers regarding projected animals. On January 31st, those animals will be segregated for pickup at about 10:00 a.m. at their cost. I think that's it.

MR. LITTLE: To that, Your Honor, I would add that the – that obviously animals don't come with birth certificates, but they do come with brand and veterinarian records. And we will be exercising our right to vet check these animals to make sure that they are not greater than four years old and that they are reasonably healthy. If they are not, they will be rejected. And I hope that doesn't happen because we'd be back in front of
(continued...)

3

Prior to January 31, 2014, a $20,000 cashier's check was delivered to MHT and, by agreement of the parties, held by its counsel pending the completion of the settlement. On January 31, 2014, Mr. Souza segregated 35 cows for delivery (Cows). After inspection by its veterinarian, MHT rejected delivery of the Cows.

Arguing alleged non-performance, MHT filed a motion to compel performance under Cal. Civ. Proc. Code § 664.6 (664 Motion).[5] On April 28, 2014, prior to a scheduled hearing on the 664 Motion, the parties again settled the matter by agreeing to the same terms as the January Agreement, except that delivery of the animals was to take place on May 9, 2014 (April Agreement).

On April 29, 2014, the day after reaching the April Agreement, the Debtors filed for chapter 7 relief. The delivery of 35 cows never occurred. Eventually, the $20,000 was returned.

**B.    The Trial**

MHT filed an adversary complaint against the Debtors on

---

[4](...continued)
Your Honor.

Settle. Hrg. Transc. 3:7 - 4:19 (Jan. 22, 2014).

[5] Cal. Civ. Proc. Code § 664.6:

> If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement.

4

August 4, 2014, alleging nondischargeability under § 523(a)(2)(A) and objecting to discharge under § 727(a). MHT filed its first amended complaint on October 6, 2014. Before trial, the parties stipulated to dismissal of the § 727 claims.

At the opening of trial, counsel for MHT stated that it was no longer pursuing one of its § 523(a)(2)(A) claims -- fraud in inducing delivery of the hay. Instead, it would only be pursuing § 523(a)(2)(A) claims on the grounds that the Debtors fraudulently entered into the January and April Agreements.

During the course of the trial, the Court made three discovery and evidentiary rulings that are the subject of this appeal: that it was harmless under Rule 37[6] for Debtors to not disclose in their Rule 26[7] Statement the sale of the Cows to a third party; that MHT waived its hearsay objection to Mr. Souza's testimony as to the sale of the Cows; and that the cross examination of Mr. Souza regarding a vacation home was not sufficiently probative to proceed over Debtors' objection.

During direct examination, Mr. Souza testified that after MHT rejected the Cows, all but one were transported to an auction yard and sold. MHT initially objected to Mr. Souza's testimony on this subject because no sale documents had been previously disclosed and provided as required under Rule 26. When the bankruptcy court noted that no one was attempting to introduce a sale document, MHT moved the bankruptcy court to bar Mr. Souza from testifying regarding the sale because the Debtors' Rule 26

---

[6] As incorporated by Bankruptcy Rule 7037.

[7] As incorporated by Rule 7026.

5

disclosure concerning Mr. Souza's testimony did not include this topic.[8] The bankruptcy court considered the matter under Rules 26 and 37 and determined that the Debtors had violated Rule 26 by not disclosing Mr. Souza's testimony regarding the sale, but found the non-disclosure "harmless." Accordingly, the bankruptcy court overruled the objection and Mr. Souza proceeded to testify regarding the sale.

The next trial day – but a short time later in actual trial time -- MHT cross examined Mr. Souza regarding the sale of the Cows. The cross examination revealed that Mr. Souza had no personal knowledge of the sale; instead, he only knew of it because of undisclosed sale receipts. Having elicited this testimony, MHT moved to strike Mr. Souza's prior testimony as hearsay. The bankruptcy court denied the motion, ruling that MHT waived its hearsay objection by failing to object to the foundation of Mr. Souza's earlier testimony.

Mr. Souza testified on direct examination that the Debtors' daughters were to be the source of funds and the cattle necessary to fulfill the settlement. During the cross-examination, MHT asked a series of questions regarding the Debtors' daughters' ownership of 4K Dairy (acquired from the Debtors in 2010), their ability to fund the $20,000 settlement payment, and their involvement with 4K Dairy. The Debtors met this line of questions with relevancy objections. MHT explained that the questions went

---

[8] Debtors listed Mr. Souza as a witness offered to provide "general information to refute the allegations in the complaint in the above-entitled action." Tr. Transcr. 138:4-6 (Nov. 3, 2015).

to control of 4K because MHT's theory is that the transfer was a sham and that the Debtors continued to control the dairy and its operations. The bankruptcy court overruled the objections but warned of its concern regarding relevancy. When MHT inquired regarding the Debtors' sale of their vacation home to their daughters in January 2012, Debtors again objected on grounds of relevancy. MHT countered that it went to the Debtors' intention to stall their Chapter 7 filing to evade a potential clawback claim in bankruptcy. The Court sustained the Debtors' objection citing FRE 403.

Ultimately, the bankruptcy court ruled in favor of the Debtors and against MHT. It entered judgment denying MHT's claims on November 10, 2015. MHT timely appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(I). The Panel has jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1.  Whether the bankruptcy court erred in allowing Mr. Souza's testimony regarding the sale of the Cows under Rules 26 and 37 and not striking the testimony as hearsay;

2.  Whether the bankruptcy court erred in limiting MHT's inquiry at trial into the Debtor's transfer of assets to their daughters; and

3.  Whether the bankruptcy court was clearly erroneous in its determination that MHT did not meet its burden under

§ 523(a)(2)(A) as to the April Agreement.[9]

## IV. STANDARD OF REVIEW

Rulings regarding discovery sanctions are reviewed for an abuse of discretion. Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1105 (9th Cir. 2001). The Panel gives "particularly wide latitude" to the trial court's discretion when making Rule 37 rulings. Id. at 1106. A bankruptcy court's evidentiary ruling is reviewed for an abuse of discretion. Slatkin v. Nelson (In re Slatkin, 525 F.3d 805, 811 (9th Cir. 2008). "Whether a requisite element of a § 523(a)(2)(A) claim is present is a factual determination reviewed for clear error." Tallant v. Kaufman (In re Tallant), 218 B.R. 58, 63 (B.A.P. 9th Cir. 1998).

## V. DISCUSSION

### A.   Mr. Souza's Testimony

The bankruptcy court determined that the Debtors violated Rule 26(a)(1) and (3) by not disclosing the sale of the Cows on January 31, 2014.[10] It then determined under Rule 37(c)(1)[11] that

---

[9] In its reply brief, MHT argues for the first time that Ms. Souza should be held liable as a partner in the Alvin Souza Dairy if it prevails under § 523(a). See Appellant Reply Br. p. 1, n.1. However, "Issues not raised in the opening brief usually are deemed waived." Dilley v. Gunn, 64 F.3d 1365, 1367 (9th Cir. 1995). To the extent MHT is asking the Panel to overrule the bankruptcy court's decision regarding Ms. Souza, the request is denied.

[10] Though not entirely clear from the transcript, it appears the bankruptcy court found a violation of Rule 26(a)(1)(A)(I) which requires the disclosure of "each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its
(continued...)

8

sanctions were unwarranted because the non-disclosure was harmless.

The bankruptcy court did not abuse its discretion in finding a violation of Rule 26 (and no one has so argued on appeal). Once it found a violation of this rule, the bankruptcy court correctly turned to Rule 37 to determine the proper sanctions - if any - as Rule 37(c)(1) exists to give teeth to the requirements of Rule 26. Yeti, 259 F.3d at 1106.

Rule 37(c) provides the penalties that may be imposed if a party fails to make disclosures as required under Rule 26. A party attempting to avoid sanctions has the burden of proof as to why its actions were either "substantially justified or harmless." Yeti, 259 F.3d at 1106-1107. Factors to consider when determining if a violation of Rule 26 is harmless include: "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice;

---

[10] (...continued) claims or defenses" and Rule § 26(a)(3)(A)(I) and (iii), which require: "(I) the name and, if not previously provided, the address and telephone number of each witness - separately identifying those the party expects to present and those it may call if the need arises ... and (iii) an identification of each document or other exhibit, including summaries of other evidence - separately identifying those items the party expects to offer and those it may offer if the need arises."

[11] Rule 37(c)(1) provides, in pertinent part:

If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

9

(3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." Lanard Toys Ltd. v. Novelty, Inc., 375 F. App'x 705, 713 (9th Cir. 2010) (citing David v. Caterpillar, Inc., 324 F.3d 851, 857 (7th Cir.2003)). "A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or if its factual findings are clearly erroneous." Pham v. Golden (In re Pham), 536 B.R. 424, 430 (B.A.P. 9th Cir. 2015). A finding of fact is clearly erroneous only if the finding is "illogical, implausible, or without support in the record." Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010).

In this instance, the bankruptcy court abused its discretion when making its Rule 37 ruling because it used the wrong legal standard by placing the burden of proof on MHT to prove how it was harmed by the non-disclosure. The key passage from the trial reads:

> Court:
>
> What I would like to hear the argument on is why this isn't harmless. It seems to me that a party's designation, though I agree was not sufficiently specific to comply with the rule [26], it seems to me that it is harmless because you should know that a party ... is likely to give testimony on a broad variety of subjects.

Tr. Transcr. 139:9-14 (Nov. 3, 2015). This statement led to MHT addressing how it was harmed, rather than the Court requiring the Debtors to demonstrate why non-disclosure was harmless. Moreover, the bankruptcy court did little to explain why it concluded the non-disclosure harmless. Therefore, the Panel cannot independently determine if, under the Lanard Toys factors, the Panel would reach the same decision. The bankruptcy court later

10

compounded its error when it cited to Mr. Souza's testimony regarding the sale of the Cows as a basis for its final ruling.[12]

Later, when MHT elicited from Mr. Souza that he had no firsthand knowledge of the sale, MHT objected to the testimony on hearsay grounds. The bankruptcy court overruled the objection and MHT claims that this, too, was error. However, the Panel finds that the bankruptcy court did not abuse its discretion on this front. FRE 103(a)(1)(A) requires a timely objection or motion to strike. A review of the transcript shows that when Mr. Souza testified earlier in the trial regarding the sale of the Cows, his counsel did not lay foundation regarding personal knowledge of the sale. Had MHT objected to the testimony on foundational grounds at that point, it (and the bankruptcy court) would have learned that Mr. Souza had no firsthand knowledge of the sale and therefore no foundation from which to testify. The bankruptcy court was within its discretion when it ruled that MHT waived its ability to move to strike when it failed to object to Mr. Souza's earlier testimony on foundational grounds.

---

[12] Although the Court did take into account the subsequent sale of the cows in its final ruling, during trial the Court indicated it would instead weigh Mr. Souza's testimony in light of his lack of first hand knowledge of the sale:

> But you've made your point, and that is he really didn't know, and that goes to the weight I give his testimony. So I am overruling the objection on both grounds. I find waiver, but in the event that I -- I find waiver by failing to raise the objection earlier. But I think your point is, is that the testimony should be given no weight anyway because he really doesn't know, and at that -- and you've made your point there.

Tr. Transcr. 7:23-8:5 (Nov. 5, 2015).

11

**B.    Ownership Testimony**

MHT also asserts that the bankruptcy court erred by limiting MHT's attempts to elicit evidence regarding the ownership and control of 4K Dairy -- the source of the cash component and the Cows for the settlement, as well as the Debtors' transfer of a vacation home to 4K Dairy. While a trial court has broad discretion in excluding evidence under FRE 403, it must engage in a balancing test to determine admissibility. Liew v. Official Receiver & Liquidator (Hong Kong), 685 F.2d 1192, 1195 (9th Cir. 1982); United States v. Moran, 493 F.3d 1002, 1012 (9th Cir. 2007). When a court does not engage in explicit balancing, the Panel reviews the ruling de novo. Id.

Here, the bankruptcy court balanced the relevancy of additional testimony regarding ownership and control of 4K Dairy and the transfer of the house against the time it would take to explore the subjects. It was clear from the start of this line of questioning that the bankruptcy court doubted its relevancy. See Tr. Transcr. 47:11-17 (Nov. 5, 2015). Eventually, the Court sustained the Debtors' objection under FRE 403 regarding the daughters' control of 4K Dairy and the transfer of the house finding that "[t]he probative value is far outweighed by the time necessary to elicit the facts surrounding it, so this is not a line of inquiry I will allow." Tr. Transcr. 49:16-19 (Nov. 5, 2015).[13]

---

[13] Debtors argue that the entire line of questioning was improper because it did not fall within the scope of the direct examination and therefore should not have been allowed under FRE 611(b). Debtors did not raise this objection at trial.

(continued...)

12

Since the bankruptcy court did engage in a balancing of the issues, the question becomes whether the bankruptcy court abused its discretion in omitting the testimony. In its ultimate ruling regarding the April Agreement, the bankruptcy court focused not on whether the Debtors had intended to deceive MHT, but instead whether the daughters' intended to fund the settlement. Since the bankruptcy court's ruling was premised on the fact that the Debtors did not control the funding source of the settlement, which was the very topic it cut off as not probative, excluding testimony on this topic was error and an abuse of discretion.

## C. Did the Court Commit Reversible Error?

MHT asks the Panel to rule that the bankruptcy court's ruling was clearly erroneous, reverse the judgment, and find in its favor. The Panel cannot reverse factual findings which support a judgment of the bankruptcy court unless it has a "definite and firm conviction that the bankruptcy court committed a clear error of judgment." Price v. Lehtinen (In re Lehtinen), 332 B.R. 404, 411 (B.A.P. 9th Cir. 2005), aff'd, 564 F.3d 1052 (9th Cir. 2009). Further, the Panel can affirm a bankruptcy court's ruling for any reason supported by the record. Encino Bus. Mgmt. v. Prize Frize, Inc. (In re Prize Frize, Inc.), 150 B.R. 456, 461 n. 11 (B.A.P. 9th Cir. 1993), aff'd, 32 F.3d 426 (9th Cir.1994); Kimes v. Stone, 84 F.3d 1121, 1126 (9th Cir. 1996).

Though the Panel concludes that the bankruptcy court erred

[13](...continued)
Accordingly, the Panel will not consider it now.

13

in its Rule 37 and FRE 403 rulings, the errors were harmless. As noted, MHT proceeded to trial under the theory that its claim was non-dischargeable under 11 U.S.C. § 523(a)(2)(A), which provides that a claim will not be discharged to the extent it is for "money, property, (or) services" obtained by "false pretenses, a false representation or actual fraud." To show nondischargeability under § 523(a)(2)(A) the plaintiff must show:

(1) the debtor made a representation;
(2) the debtor knew the representation was false at the time he or she made it;
(3) the debtor made the representation with the intent to deceive;
(4) the creditor justifiably relied on the representation; and
(5) the creditor sustained damage as a proximate result of the misrepresentation having been made.

Van Zandt v. Mbunda (In re Mbunda), 484 B.R. 344, 350 (B.A.P. 9th Cir. 2012), aff'd, 604 F. App'x 552 (9th Cir. 2015).

Accordingly, in order to prove a claim under § 523(a)(2)(A), in addition to proving the Debtors had an intent to deceive, MHT has the burden of demonstrating that it specifically relied on the Debtors' misrepresentations and that it sustained damages as a proximate result of the misrepresentations. Even if Mr. Souza entered into the January and April Agreements with the intent to deceive and delay as MHT urges, the record is devoid of any evidence that MHT sustained damages as a proximate cause of its reliance on the alleged misrepresentations.

To show proximate damages, MHT must have forgone valuable collection remedies in relying on Mr. Souza's representations that the Debtors would perform under the January and April Agreements. See (Siriani v. Nw. Nat'l Ins. Co., of Milwaukee Wis. (In re Siriani), 967 F.2d 302, 305 (9th Cir. 1992), as amended

14

(June 29, 1992) (addressing renewals of credit). The only damage asserted before the bankruptcy court, $80,000 referenced at trial, is based on MHT's perceived value of the fully performed January and April Agreements.[14] This, however, is not a correct measure for determining proximate damages. The correct measure is the value of the collection remedies available to MHT and lost or reduced due to its reliance on Mr. Souza's agreements to settle the debt. Siriani, 967 F.2d at 307. MHT did not demonstrate that by entering into the either the January or April Agreement it was foregoing any available collection remedies, much less ones that lost value because it relied on the Agreements.

There was no evidence presented that the Debtors had the wherewithal to satisfy a judgment taken in January (or April) of 2014, such that MHT would actually have collected on a judgment. Rather, the evidence presented was that the Debtors' daughters were putting up the assets to meet the terms of the Agreements because the Debtors had no cash or cattle for a settlement. Tr. Transcr. 133:25 - 13:7 (Nov. 3, 2015). Thus, MHT has failed to show that it sustained damages as a proximate cause of the promises made by Mr. Souza on January 22 or April 28, 2014. See also Chopra v. Chopra (In re Chopra), No. 10-52819 CN, 2013 WL 1681773, at *7-8 (Bankr. N.D. Cal. Apr. 17, 2013) (Siriani in a settlement context means a plaintiff must "demonstrate that he

---

[14] See Tr. Transcr. 75:11-14(Nov. 3, 2015), ascribing anticipated value of $60,000 for the cattle to be delivered, in addition to the $20,000 delivered check. During closing arguments, counsel for MHT argued for an anticipated value of $40,000 for the cattle. See Tr. Transcr. 141:21-142:20 (Nov. 5, 2015).

15

forfeited valuable collection remedies as a result of the ... [s]ettlement [a]greement").

At the hearing before the Panel, when questioned about damages, counsel for MHT also suggested that MHT was damaged insofar as it had given up the right to pursue and obtain a judgment in the State Court. However, as the parties explained to the State Court when they entered into the January Agreement, if a disagreement arose as to the cattle, the parties would be back before the State Court.[15] In an attempt to resolve the dispute, as contemplated in the January Agreement, Mr. Souza agreed on April 28 to attempt a second transfer of cattle on or before May 9, 2014. The suggestion that a default occurred is not quite correct, insofar as the January and April Agreements contemplated that the cattle presented might not be accepted. At that point, MHT had the right to pursue its original claim. When questioned, counsel for MHT could not explain to the Panel why securing a State Court judgment prior to the bankruptcy would place it in a superior position with respect to its claim. In summation, MHT did not demonstrate that it sustained damage as a result of its reliance on the unperformed January and April Agreements.

In the end, MHT failed to present evidence of a material element of its claim under § 523(a)(2)(A). Accordingly, the bankruptcy court's ruling denying MHT's complaint to deny the

---

[15] This review of events supports the bankruptcy court's conclusion that the Debtors complied with the terms of the January Agreement. The Debtors delivered cattle. MHT exercised its right of refusal and both parties thereafter engaged in an attempt to resolve the disagreement. This is exactly what the parties agreed to in open court in January 2014.

16

Debtor's discharge based on fraud or misrepresentation was not error and will stand.

## VI. CONCLUSION

For the foregoing reasons, the order of the bankruptcy court is AFFIRMED.